MANATT, PHELPS & PHILLIPS, LLP
JOSEPH E. LASKA (Bar No. 221055)
E-mail: jlaska@manatt.com
NATHANIEL A. COHEN (Bar No. 289142)
E-mail: nacohen@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: (415) 291-7400
Facsimile: (415) 291-7474

JUSTIN JONES RODRIGUEZ (Bar No. 279080)
E-mail: jjrodriguez@manatt.com
11355 W. Olympic Boulevard
Los Angeles, CA 90064
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Attorneys for Defendant
AETNA LIFE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HENDRICKS, ANDREW SAGALONGOS; on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>      vs.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>            Defendant. | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>No. 2:19-cv-6840-CJC-MRW<br><br>Hon. Cormac J. Carney<br><br>**DEFENDANT AETNA LIFE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Filed concurrently with Declaration of Joann Conejo.<br><br>Date:      November 18, 2019<br>Time:      1:30 p.m.<br>Courtroom: 7C<br><br>Action Filed: August 7, 2019 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 18, 2019 at 1:30 p.m. in Courtroom 7C of this Court, Aetna Life Insurance Company ("Aetna") will and does move to dismiss the complaint filed by Plaintiffs Brian Hendricks ("Hendricks") and Andrew Sagalongos ("Sagalongos") under Federal Rule of Civil Procedure 12(b)(6) .

The motion is made on two principal grounds:

First, Plaintiffs failed to exhaust mandatory administrative remedies applicable to their claims for benefits under group health plans subject to the Employee Retirement Income Security Act of 1974 ("ERISA")—a prerequisite to seeking judicial review under 29 U.S.C. § 1132(a) under controlling Ninth Circuit precedent.

Second, Plaintiffs fail to state a claim upon which relief can be granted by failing to identify any plan provision allegedly violated by Aetna.

The motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the Declaration of Joann Conejo filed concurrently, any evidence or argument presented at the hearing, and any and all papers on file with the Court.

As required by Local Rule 7-3, the parties met and conferred between September 23 and 27, 2019 but were unable to resolve the issues in this motion.

Dated: September 30, 2019                     MANATT, PHELPS & PHILLIPS, LLP


By: /s/ Joseph E. Laska
    Joseph E. Laska
    Attorneys for Defendant
    AETNA LIFE INSURANCE
    COMPANY

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF ARGUMENT ........................................................ 1

II.  RELEVANT FACTUAL BACKGROUND ................................... 2

    A.  Plaintiffs' allegations ................................................................ 2

    B.  Facts pertaining to Hendricks ................................................. 3

    C.  Facts pertaining to Sagalongos ............................................... 5

III.  LEGAL STANDARD ................................................................... 7

IV.  THE COMPLAINT SHOULD BE DISMISSED ........................... 8

    A.  Plaintiffs' plan documents and claims correspondence are incorporated by reference into the complaint ......................... 9

    B.  Plaintiffs' complaint should be dismissed due to Plaintiffs' failure to exhaust mandatory administrative remedies .................... 10

        1.  Plaintiffs failed to pursue the mandatory second level of administrative appeals ................................................. 11

        2.  Amendment would be futile ............................................ 15

    C.  Plaintiffs fail to state a claim for relief because they do not identify any plan provision allegedly violated by Aetna ................. 16

V.  CONCLUSION ........................................................................... 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
  990 F. Supp. 3d 1110 ................................................................. 16

*Amato v. Bernard*,
  618 F.2d 559 (9th Cir. 1980) ..................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................... 8

*Bailey v. Chevron Corp. Omnibus Health Care Plan*,
  2014 WL 221926 (C.D. Cal. May 7, 2014) ............................ 12, 15

*Balistreri v. Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir. 1990) ....................................................... 8

*Barboza v. Cal. Ass'n of Prof'l Firefighters*,
  651 F.3d 1073 (9th Cir. 2011) ................................................... 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................... 7, 8, 17

*Brooks v. Kroger Co.*,
  2019 WL 3778675 (S.D. Cal. Aug. 12, 2019) .......................... 9, 10

*Diaz v. United Agric. Employee Welfare Benefit Plan & Trust*,
  50 F.3d 1478 (9th Cir. 1995) ................................................ 11, 14

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ................................................... 15

*Holmes v. Colo. Coal. For Homeless Long Term Disability Plan*,
  762 F.3d 1195 (10th Cir. 2014) ................................................. 12

*Kazda v. Aetna Life Ins. Co.*,
  No. 3:19-CV-02512-WHO, Slip op. (N.D. Cal. Sept. 11, 2019) ........ 16, 17

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ................................................ 9, 10

*Korman v. ILWU-PMA Claims Office*,
  2019 WL 1324021 (C.D. Cal. March 19, 2019) ..................... 16, 17

*Montvale Surgical Ctr. v. Horizon Blue Cross Blue Shield of N.J., Inc.*,
  2012 WL 6554404 (D.N.J. Dec. 14, 2012) ................................. 12

*Nathaniel W. v. United Behavioral Health*,
  2018 WL 3585180 (N.D. Cal. July 26, 2018) ....................... 13, 14

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Noren v. Jefferson Pilot Fin. Ins. Co.*,
378 F. App'x 696 (9th Cir. 2010).............................................................. 12

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998), *superseded by statute on other
grounds as stated in Steinle v. City and County of San Francisco*,
919 F.3d 1154 (9th Cir. 2019)............................................................... 9, 10

*Price v. Xerox Corp.*,
445 F.3d 1054 (8th Cir. 2006) .................................................................. 12

*Scarff v. Raytheon Co. Short Term Disability Plan*,
581 F.3d 899 (9th Cir. 2009) ............................................................... 13, 14

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz.,
Inc.*,
770 F.3d 1282 (9th Cir. 2014) .................................................................. 12

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ...................................................................... 9

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
546 F.3d 620 (9th Cir. 2008) .................................................................... 11

*In re WellPoint, Inc. Out-of-Network UCR Rates Litigation*,
865 F. Supp. 3d 1002 (C.D. Cal. 2011)..................................................... 16

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
588 F.3d 659 (9th Cir. 2009) ...................................................................... 8

**STATUTES**

29 U.S.C. § 1132..................................................................................... 11

29 U.S.C. § 1132(a) ..................................................................... 10, 12, 14

29 U.S.C. § 1132(a)(1)(B) ................................................................ 1, 2, 16

29 U.S.C. § 1132(a)(3) ................................................................. 1, 3, 16, 17

ERISA ..............................................................................................*passim*

**RULES AND REGULATIONS**

29 C.F.R. § 2560.503-1(c)(2) .................................................................. 12

Fed. R. Civ. P. 12(b)(6) ....................................................... 7, 8, 9, 16, 17

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

1                   **MEMORANDUM OF POINTS AND AUTHORITIES**

## 2 I.     SUMMARY OF ARGUMENT

3        Plaintiffs' complaint in this putative ERISA class action is defective in two

4 respects.

5        First, Plaintiffs filed this lawsuit without exhausting mandatory

6 administrative remedies. The relevant plan documents clearly describe a two-level

7 administrative appeal process that must be pursued after a plan participant receives

8 an adverse benefit determination from Aetna. Both Plaintiffs █████████████████

9 ████████████████████████████ in response to claims for ██████████████

10 ████████████████████████ an experimental and investigational procedure

11 excluded from coverage under their ERISA plans. While Plaintiffs both pursued

12 *first-level* administrative appeals, neither pursued *second-level* appeals, despite

13 comprehensive descriptions of the process in both plan documents *and* Aetna's

14 communications with Plaintiffs throughout the claims process. And Plaintiffs

15 cannot cure this defect because the time to file second-level appeals has expired. On

16 this ground alone, controlling Ninth Circuit precedent compels that this case be

17 dismissed with prejudice and without leave to amend.

18        Second, Plaintiffs identify no provision of their ERISA plans that Aetna

19 allegedly violated when ████████████████ for experimental and investigational

20 medical procedures. Plaintiffs' failure to address *any* specific plan term means that

21 their claims under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3) fail to state claims upon

22 which relief can be granted and should be dismissed on this alternative basis.

23        Aetna respectfully requests that the Court dismiss Plaintiffs' claims without

24 leave to amend.

25

26

27

28

## II.   RELEVANT FACTUAL BACKGROUND

### A.   Plaintiffs' allegations

Plaintiffs allege that they are both afflicted with ███████████ ██████, and that their respective treating surgeons recommended that ███████ ████. (Compl. ¶¶ 17-18, 23-24.) Plaintiffs allege that Aetna categorically denies coverage for ██████ in all Aetna plans on the basis that the surgery is experimental and investigational. (*Id.* ¶¶ 13-16.) Both Plaintiffs allege that they "elected to proceed with the procedure" anyway. (*Id.* ¶¶ 18, 24.)

Hendricks alleges that he "was covered under an Aetna plan issued to his employer WPP Group USA, Inc.[,]" and that a "[r]equest was made of Aetna to approve ██████" for him. (*Id.* ¶¶ 6, 19.) He alleges that his "request for ██████" was denied by Aetna on the basis that L-ADR was experimental and investigational under Aetna Clinical Policy Bulletin ("CPB") ████, "████████████ ████████" which considers ██████ to be experimental and investigational. (*Id.* ¶ 20.)

Sagalongos alleges that he "was covered under an Aetna plan issued to his employer Quest Diagnostics[,]" and that "[r]equest was made of Aetna to approve ██████" for him as well. (*Id.* ¶¶ 6, 25.) He similarly alleges that his "request for █ ████" was denied by Aetna on the basis that ██████ was experimental and investigational under the same Aetna CPB. (*Id.* ¶ 26.)

Each Plaintiff alleges that he filed a single appeal of Aetna's denial of his requests for ██████ benefits, and that Aetna upheld its denials of benefits on appeal. (*Id.* ¶¶ 21, 27.) Plaintiffs allege that, "[a]s a result of Aetna's rejection of his claim," Hendricks "paid for ██████ out of his own pocket." (*Id.* ¶ 22.)

Plaintiffs' complaint sets forth two claims for relief. First, Plaintiffs advance a claim under 29 U.S.C. § 1132(a)(1)(B) for denial of plan benefits and for clarification of rights, alleging—without any reference to any specific plan term— that Aetna's treatment of claims for ██████ constitutes "a practice wholly

inconsistent with the terms of Plaintiffs' plans." (*See* Compl. ¶¶ 40-45.) Second, Plaintiffs advance a claim under 29 U.S.C. § 1132(a)(3) alleging—again, without any reference to any specific plan term or provision of law—that Aetna's alleged conduct is somehow "improper[]" and in violation of fiduciary duties under ERISA, and seeking "declaratory, equitable, and remedial relief[.]" (*See id.* ¶¶ 46-50.)

### B.     Facts pertaining to Hendricks

Hendricks's plan documents, and Aetna's correspondence with Hendricks concerning ███████████████████, clearly describe a two-level appeal process that must be completed before bringing a civil action under ERISA.

The claims resolution procedures applicable to Hendricks's plan are laid out in detail in a Summary Plan Description ("SPD") for the Aetna Choice POS II WPP Group USA, Inc. Benefit Plan, effective January 1, 2017, and applicable for Plan years beginning January 1, 2017 and January 1, 2018 ("WPP SPD"). (Conejo Decl., Ex. A at 1, 4, 94-99.) The WPP SPD provides that enrollees like Hendricks "have the right to file an appeal from an Adverse Benefit Determination relating to service(s) you have received or could have received from your health care provider under the Plan." (*Id.* at 95.) Under a bolded heading "Exhaustion of Internal Appeals Process," the WPP SPD provides that "[g]enerally, *you are required to complete all appeal processes of the Plan before being about to obtain External Review or bring an action in litigation*[,]" except where "Aetna, or the Plan or its designee, does not strictly adhere to all claim determination and appeal requirements under applicable federal law[.]" (*Id.* at 96 (emphasis added).)

The WPP SPD provides specific procedures for pursuing both levels of mandatory administrative appeals. An enrollee may file an appeal in writing to Aetna at the address provided; or if the appeal is of an urgent nature, an enrollee may call Aetna at a toll-free phone number. (*See id.*) A first-level appeal must be submitted within 180 days after an Adverse Benefit Determination and "should include [all necessary identifying information], and any other comments,

1   documents, records or other information you would like to have considered,

2   whether or not submitted in connection with the initial claim." (*Id.*) Regarding the

3   second-level appeal, the WPP SPD states that, "[i]f you are dissatisfied with a pre-

4   service or post-service appeal decision, *you may file a second level appeal with*

5   *Aetna* within 60 days of receipt of the level one appeal decision." (*Id.* at 96-97

6   (emphasis added).) Only after timely pursuing both levels of internal appeal, and

7   where the enrollee "do[es] not agree with the Final Internal Adverse Benefit

8   Determination,"[1] does the enrollee "have the right to bring a civil action under

9   Section 502(a) of ERISA, if applicable." (*Id.* at 97.)

10      Aetna consistently reminded Hendricks of the mandatory two-level internal

11   appeals process throughout its treatment of his claim. Aetna's ▮▮▮▮▮▮ letter

12   to Hendricks ▮▮▮▮▮▮▮▮▮▮ stated that, "[i]n general, … two levels

13   of internal appeal are available under plans covering employees of an employer."

14   (Conejo Decl., Ex. B at 4.) The ▮▮▮▮▮▮ letter included a detailed description

15   of the two-level appeal process, consistent with the WPP SPD, and referred

16   Hendricks to the WPP SPD for more information. (*See id.* at 4 (describing two-

17   level appeals process); *id.* at 3 ("See your plan brochure or other plan document,

18   such as … your Summary Plan Description.").)

19      Hendricks submitted a first-level appeal to Aetna. (Compl. ¶ 21.) Aetna

20   responded in writing on ▮▮▮▮▮▮, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮▮▮▮. (*Id.*; Conejo Decl., Ex. C at 1-2.) In the first-level appeal

22   decision, Aetna again reminded Hendricks that "[i]f you disagree with this decision,

23   <u>you may request a second level appeal</u>." (*Id.* at 5 (emphasis in original).) Aetna

24

25

26   ───────────────

[1] "A 'Final Internal Adverse Benefit Determination' is defined as an Adverse

27   Benefit Determination that has been upheld by the appropriate named fiduciary
(Aetna) at the completion of the internal appeals process, or an Adverse Benefit

28   Determination for which the internal appeals process has been exhausted." (Conejo
Decl., Ex. A at 96.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

enclosed a document with its first-level appeal decision titled "Aetna Appeal Process & Member Rights," which again described the second-level appeal process:

> If you disagree with the response in our first appeal resolution letter, you may request a second-level appeal. To begin this process, you must send us a written request to Aetna within 60 calendar [days] after you receive the resolution letter. If you do not request a second-level appeal within that time period, we'll consider our original decision stated in the first resolution letter to be final.

(*Id.* at 7.) Aetna also enclosed a blank member complaint and appeal form that Hendricks could "use for future appeals." (*Id.* at 13-14.)

Plaintiffs do not allege that Hendricks ever submitted a second-level appeal request after receiving Aetna's first-level appeal determination letter. Plaintiffs allege only that Hendricks submitted a first-level appeal and received Aetna's ███ ████ response letter ██████████████████████████. (*See* Compl. ¶ 21.)

### C.   Facts pertaining to Sagalongos

Sagalongos's plan, and Aetna's correspondence with Sagalongos concerning ████████████████████, also clearly describe a two-level appeal process that must be completed before bringing a civil action under ERISA.

The claims resolution procedures applicable to Sagalongos's plan are similarly laid out in two governing plan documents: first, the Medical, Prescription Drug, HealthyQuest, Supplemental Health, Dental and Vision Programs, 2019 Summary Plan Description ("Quest SPD"), and second, the Group Welfare Plan of Quest Diagnostics Incorporated 2019 Administration Summary Plan Description ("Administration SPD"), incorporated by reference into the Quest SPD. (*See* Conejo Decl., Ex. D at 1 ("Additional information, including administrative and legal information, is described separately in the [Administration SPD]."); *id.* at 84 ("For more information on claims and appeals, refer to the Administration SPD.").)

Just as in the WPP SPD, the Administration SPD provides that enrollees like Sagalongos "have the right to file an appeal from an Adverse Benefit Determination relating to service(s) you have received or could have received from your health care provider under the Plan." (Conejo Decl., Ex. E at 10.) Under a bolded heading for "Exhaustion of Internal Appeals Process," the Administration SPD provides that "[g]enerally, *you are required to complete all appeal processes of the Plan before being about to obtain External Review or bring an action in litigation*[,]" except where "Aetna, or the Plan or its designee, does not strictly adhere to all claim determination and appeal requirements under applicable federal law[.]" (*Id.* at 11 (emphasis added).)

The Administration SPD provides specific procedures for pursuing both levels of mandatory administrative appeals. A first-level appeal must be submitted within 180 days after an Adverse Benefit Determination and "should include [all necessary identifying information], and any other comments, documents, records or other information you would like to have considered, whether or not submitted in connection with the initial claim." *Id.* Regarding the second-level appeal, the Administration SPD states that, "[i]f you are dissatisfied with a pre-service or post-service appeal decision, *you may file a second level appeal with Aetna* within 60 days of receipt of the level one appeal decision." (*Id.* at 12 (emphasis added).) Just as in the WPP SPD, the Administration SPD provides that, only *after* timely pursuing both levels of internal appeal, an enrollee has "the right to bring a civil action under Section 502(a) of ERISA, if applicable" if the enrollee "do[es] not agree with the Final Internal Adverse Benefit Determination[.]" (*Id.*)

As with Hendricks, Aetna consistently reminded Sagalongos of the mandatory two-level internal appeals process throughout the claim process. Aetna's ███████ letter to Sagalongos ███████████████████ stated that, "[i]n general, … two levels of internal appeal are available under plans covering employees of an employer." (Conejo Decl., Ex. F at 6.) The ███████ letter

included a detailed description of the two-level appeal process, consistent with the Administration SPD, and referred Sagalongos to the plan documents for more information. (*See id.* at 6-7; *id.* at 5 ("See your plan brochure or other plan document, such as … your Summary Plan Description.").)

Sagalongos submitted a first-level appeal to Aetna. (Compl. ¶ 27.) Aetna responded in writing on ▮▮▮▮, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮. (*Id.*; Conejo Decl., Ex. G at 3.) In the first-level appeal decision, Aetna again reminded Sagalongos that "[i]f you disagree with this decision, <u>you may request a second level appeal</u>." (*Id.* at 5 (emphasis in original).) Just as with Hendricks, Aetna enclosed a document with its first-level appeal decision on Sagalongos's claim titled "Aetna Appeal Process & Member Rights," which again described the second-level appeal process:

> If you disagree with the response in our first appeal resolution letter, you may request a second-level appeal. To begin this process, you must send us a written request to Aetna within 60 calendar [days] after you receive the resolution letter. If you do not request a second-level appeal within that time period, we'll consider our original decision stated in the first resolution letter to be final.

(*Id.* at 6.) Aetna also enclosed a blank member complaint and appeal form that Sagalongos could "use for future appeals." (*Id.* at 13-14.)

Plaintiffs do not allege that Sagalongos ever submitted a second-level appeal request after receiving Aetna's first-level appeal determination letter. Plaintiffs allege only that Sagalongos submitted a first-level appeal and received Aetna's ▮▮ ▮▮▮▮ response letter ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Compl. ¶ 27.)

## III.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Courts are not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. A plaintiff must provide the basis for his claimed entitlement to relief beyond mere labels and conclusions or formulaic recitation of the elements of the causes of action. *See Twombly*, 550 U.S. at 555-57. Conclusory statements, unlike proper factual allegations, are not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 681. Under this standard, a motion to dismiss should be granted where, as here, the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 558-59; s*ee also William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"). A Rule 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

## IV.    THE COMPLAINT SHOULD BE DISMISSED

Despite clear appeal instructions in the governing plan documents and Aetna's claims correspondence, Plaintiffs failed to pursue all mandatory administrative remedies under the terms of their plans by failing to submit second-level administrative appeals. Further, Plaintiffs fail to state claims upon which relief can be granted by failing to allege that Aetna violated any specific term of their plans. For these reasons, Plaintiffs' complaint should be dismissed.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

### A. Plaintiffs' plan documents and claims correspondence are incorporated by reference into the complaint.

While Plaintiffs did not attach the relevant plan documentation and claims correspondence as exhibits to the complaint, those materials should be considered to be incorporated by reference into the complaint, because Plaintiffs' claims for relief depend on their contents and they are dispositive on the issue of Plaintiffs' failure to exhaust mandatory administrative remedies.

Documents that are not attached to a complaint, but are nonetheless referred to and relied upon in the complaint, may be incorporated by reference if the plaintiffs refer extensively to the documents and the plaintiffs' claims depend on the documents. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference appropriate where (1) a plaintiff's claim depends on a document, (2) the document is not attached to the complaint but the defendant attaches it to their moving papers, and (3) the parties do not dispute the authenticity of the document); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (document incorporated by reference may be treated it as if it were part of the complaint); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Steinle v. City and County of San Francisco*, 919 F.3d 1154 (9th Cir. 2019) (endorsing incorporation of ERISA plan documents by reference). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Brooks v. Kroger Co.*, 2019 WL 3778675, at *2 (S.D. Cal. Aug. 12, 2019); *see also Parrino*, 146 F.3d at 706 (consideration of plan documents not attached to the complaint held to be proper where the plaintiff's "claims rest[ed] on his membership in FHP's plan and on the terms of the plan" and "documents governing plan membership, coverage, and administration" were "essential to his complaint").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

Here, the complaint identifies and incorporates by reference the relevant ERISA plans and the administrative claims correspondence between Plaintiffs and Aetna. The plan documents, and the correspondence between Plaintiffs and Aetna concerning the claims at issue in Plaintiffs' complaint, are essential to their claims. The allegations that Hendricks and Sagalongos were both "covered under an Aetna plan" are central to Plaintiffs' claims that they were denied benefits under those plans and that Aetna supposedly breached fiduciary duties with respect to those plans. (Compl. ¶¶ 6, 43, 48-49.) Plaintiffs' allegations that they submitted claims and first-level appeals seeking benefits for ████████, and their allegations concerning the content and nature of Aetna's communications with Plaintiffs about those claims, are also central to Plaintiffs' lawsuit and form the basis of their claims for relief. (*Id.* ¶¶ 19-21, 25-27, 42-43, 48-49.) The complaint even ████████ ████ at some length. (*Id.* ¶¶ 20, 26.) Thus, Plaintiffs' claims "depend on" the plan documents and Aetna's claims denial and appeal correspondence, and those materials should be considered to be incorporated by reference into the complaint. *See Knievel*, 393 F.3d at 1076. The Court should treat these documents "as part of the complaint" and "assume that [their] contents are true" for purposes of this motion. *See Brooks*, 2019 WL 3778675, at *2 (citing *Parrino*, 146 F.3d at 705-06).

**B.     Plaintiffs' complaint should be dismissed due to Plaintiffs' failure to exhaust mandatory administrative remedies.**

Plaintiffs have failed to exhaust mandatory administrative remedies applicable to their Aetna plans by failing to pursue second-level internal appeals before filing this lawsuit seeking relief under 29 U.S.C. § 1132(a). Plaintiffs cannot cure this fatal procedural defect. As a consequence, their complaint should be dismissed without leave to amend.

### 1.    Plaintiffs failed to pursue the mandatory second level of administrative appeals.

Neither Hendricks nor Sagalongos elected to pursue the remaining internal administrative appeal steps established for their respective Aetna plans after receiving Aetna's first-level appeal decisions ███████████████████████ ██████████████████████████. Their decisions not to pursue second-level appeals constitute a failure to exhaust mandatory administrative remedies. Under binding Ninth Circuit precedent regarding exhaustion of administrative remedies in ERISA litigation, their claims should be dismissed.

The Ninth Circuit has "consistently held that before bringing suit under [29 U.S.C. § 1132], an ERISA plaintiff claiming a denial of benefits 'must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court.'" *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (quoting *Diaz v. United Agric. Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995)). The Ninth Circuit has recognized limited exceptions to the exhaustion requirement that do not apply in this case, such as where "resort to the administrative route is future or the remedy inadequate." *Vaught*, 546 F.3d at 626-27 (quoting *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980)).[2] The Ninth Circuit's exhaustion doctrine reinforces Congress's requirement that employee benefit plans provide an administrative process for denied claims. *See Amato*, 618 F.2d at 567. This serves to "reduce the number of frivolous lawsuits," to "promote the consistent treatment of claims for benefits," to "provide a nonadversarial method of claims settlement," and to "minimize the costs of claims settlement." *Id.* at 567.

---

[2] In addition, "when an employee benefits plan fails to establish or follow 'reasonable claims procedures' consistent with the requirements of ERISA, a claimant need not exhaust because his claims will be deemed exhausted." *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011) (citing 29 C.F.R. § 2560.503-1(l)). There is no credible allegation that is the case here.

ERISA regulations permit plans to establish up to two levels of mandatory internal appeals that must be pursued before a claimant has the right to bring a civil action under 29 U.S.C. § 1132(a). *See* 29 C.F.R. § 2560.503-1(c)(2) (claims procedures of a group health plan may not "require[] a claimant to file *more than two appeals* of an adverse benefit determination prior to bringing a civil action under section 502(a) of [ERISA]") (emphasis added); *Price v. Xerox Corp.*, 445 F.3d 1054, 1056 (8th Cir. 2006) ("The regulations … permit … plans to mandate a second internal appeal of a denial before a claimant may sue."). A claimant may bypass a plan's administrative appeal remedies *only* where the plan "could reasonably be read as making *optional* the administrative appeals process." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1298-99 (9th Cir. 2014) (emphasis added).

When a plan establishes two levels of mandatory internal appeals, a claimant may not bring a civil action under 29 U.S.C. § 1132(a) unless and until both levels of internal appeals are properly exhausted. *See Noren v. Jefferson Pilot Fin. Ins. Co.*, 378 F. App'x 696, 697-98 (9th Cir. 2010) (affirming district court's dismissal for failure to pursue a second-level appeal); *Holmes v. Colo. Coal. For Homeless Long Term Disability Plan*, 762 F.3d 1195, 1209-14 (10th Cir. 2014) (affirming district court's dismissal for failure to pursue a second-level appeal, where the plan documents did not describe two levels of administrative appeals but the defendant described the two-level process in its initial claims denial letter and in its first-level appeal denial letter); *Price*, 445 F.3d at 1055-56 (same); *Bailey v. Chevron Corp. Omnibus Health Care Plan*, 2014 WL 221926, at *3 (C.D. Cal. May 7, 2014) ("because Plaintiff completed two mandatory internal appeals, she exhausted her administrative remedies"); *see also Montvale Surgical Ctr. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2012 WL 6554404, at *4-5 (D.N.J. Dec. 14, 2012) (enforcing two-level administrative appeal process).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

1    Further, in ERISA litigation, plan participants are charged with constructive

2 knowledge of the contents of the governing plan documents, including the SPD. *See*

3 *Scarff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 906-08 (9th Cir.

4 2009) (enforcing contractual one-year statute of limitations in SPD and declining to

5 require plan administrators to separately inform participants of time limits

6 contained in an SPD); *Nathaniel W. v. United Behavioral Health*, 2018 WL

7 3585180, at *5 (N.D. Cal. July 26, 2018) (limitations period was "available to

8 plaintiffs" in the SPD and separate notice was not required).

9    Here, the relevant plan documents describe two levels of mandatory internal

10 appeals, and neither Plaintiff's failure to pursue a mandatory second-level appeal is

11 excused by any of the limited exceptions to the Ninth Circuit's ERISA

12 administrative exhaustion requirement.

13    For both Hendricks and Sagalongos, the governing plan documents are clear

14 that plan participants are "required to complete all appeal processes of the Plan

15 before being able to … bring an action in litigation." (Conejo Decl., Ex. A at 96;

16 Ex. E at 11.) The governing documents for both plans describe mandatory two-level

17 administrative appeal processes. Both the WPP SPD, applicable to Hendricks's

18 plan, and the Administration SPD, applicable to Sagalongos's plan, provide that,

19 "[i]f you are dissatisfied with a pre-service or post-service appeal decision, *you may*

20 *file a second level appeal with Aetna*." (Conejo Decl. Ex. A at 96-97; Ex. E at 12.)

21 Only *after* timely pursuing both levels of internal appeal, an enrollee has "the right

22 to bring a civil action under Section 502(a) of ERISA, if applicable" if the enrollee

23 "do[es] not agree with the Final Internal Adverse Benefit Determination[.]" (Conejo

24 Decl., Ex. A at 97; Ex. E at 12.) Plaintiffs only allege, however, that they submitted

25 first level appeals, and do not allege that they pursued their administrative claims

26 any further. (*See* Compl. ¶¶ 21, 27.)

27    The SPDs alone are sufficient to charge Plaintiffs with knowledge of the two-

28 level appeal process. *Scarff*, 581 F.3d at 906-08; *Nathaniel W.*, 2018 WL 3585180

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

at *5. Yet Aetna's correspondence with Plaintiffs *also* consistently affirmed the need to submit a second administrative appeal before seeking judicial review of Aetna's ▮▮▮▮▮▮▮▮, and provided step-by-step instructions and time limits for doing so. In both initial ▮▮▮ letters, Aetna reminded Plaintiffs that Aetna group health plans require two levels of administrative appeals. (*See* Conejo Decl., Ex. B at 4; Ex. F at 6.) In its subsequent first-level appeal decisions, Aetna specifically told both Plaintiffs that, if they disagreed with the decision, they "may request a second level appeal" within 60 days, consistent with the SPDs. (Conejo Decl., Ex. C at 5, 7; Ex. G at 5-6.) In the same section discussing "[s]econd-level appeal[,]" underneath the mailing address for Plaintiffs to submit their second-level appeals, the letters again remind Plaintiffs that if they "do not agree with *the final decision*," they "have the right to bring a civil action under Section 502(a) of ERISA within two years of the decision." (*See* Conejo Decl., Ex. C at 7 (emphasis added); Ex. G at 6 (same).) Aetna further explained in its first-level appeal decisions that Plaintiffs would have 60 calendar days to pursue a second-level appeal, and that if Plaintiffs did not request a second-level appeal within that time period, Aetna would "consider [its] original decision stated in the first resolution letter to be final." (*See* Conejo Decl., Ex. C at 7 (emphasis added); Ex. G at 6 (same).) Aetna also enclosed blank appeals forms for Hendricks and Sagalongos to "use for future appeals." (*See* Conejo Decl., Ex. C at 13-14; Ex. G at 13-14.) So even if Plaintiffs were not charged with knowledge of the governing plan documents, *see Scarff*, 581 F.3d at 906-08, Plaintiffs cannot claim that Aetna's communications left any doubt that a second-level administrative appeal was required before filing a lawsuit under 29 U.S.C. § 1132(a).

Despite these clear requirements, Plaintiffs nonetheless failed to complete the administrative appeal process before filing this lawsuit. Plaintiffs have therefore failed to exhaust mandatory administrative remedies, and their claims should be dismissed. *See Diaz*, 50 F.3d at 1483 ("By not submitting a written appeal to the

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
San Francisco

14

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

1  [administrator], Mario failed to comply with the Plan's internal review procedures
2  and hence did not exhaust the available administrative remedies."); *Bailey*, 2014
3  WL 221926, at *3 ("*because Plaintiff completed two mandatory internal appeals,*
4  *she exhausted her administrative remedies*") (emphasis added).

### 2. Amendment would be futile.

6      Courts need not grant leave to amend pleadings if amendment would be
7  futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir.
8  2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Dismissal with prejudice
9  and without leave to amend is appropriate if "it is clear on de novo review that the
10 complaint could not be saved by amendment." *Id.* at 1052.

11     In this case, Plaintiffs' complaint cannot be saved by amendment. As
12 discussed, Plaintiffs have not alleged—because they cannot allege—that they
13 completed the administrative appeal steps established by Aetna for the ERISA plans
14 at issue. And the time for Plaintiffs to timely file second-level administrative
15 appeals with Aetna has now expired. Aetna responded to Hendricks's first-level
16 appeal on ██████████, and Hendricks had 60 days from that date to initiate a
17 second-level appeal, through ██████████. (*See* Conejo Decl., Ex. C at 5, 7.)
18 Aetna responded to Sagalongos's first-level appeal on ██████████, and
19 Sagalongos also had 60 days to initiate a second-level appeal, through ██████████
20 ██████ (*See* Conejo Decl., Ex. G at 5-6.) Those deadlines have expired. Under
21 these circumstances, where Plaintiffs can no longer cure a fatal procedural defect,
22 any amendment of the complaint would be futile. As a result, dismissal with
23 prejudice and without leave to amend is warranted in this case. *See Eminence*
24 *Capital*, 316 F.3d at 1052.

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
San Francisco

15

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT

**C.    Plaintiffs fail to state a claim for relief because they do not identify any plan provision allegedly violated by Aetna.**

To properly plead an ERISA claim predicated on an alleged violation of plan terms, a plaintiff must identify the specific plan terms that have allegedly been violated. *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 990 F. Supp. 3d 1110. 1155 (C.D. Cal. 2015) ("a plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that confers the benefit in question") (quoting *Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*, 2013 WL 149356 (S.D. Fla. Jan. 14, 2013)); *see also Kazda v. Aetna Life Ins. Co.,* No. 3:19-CV-02512-WHO, Slip op. at 6-7 (N.D. Cal. Sept. 11, 2019) (Section 1132(a)(1)(B) and Section 1132(a)(3) claims against Aetna dismissed where the plaintiff's complaint "did not include specific provisions of her plan that she purports conflict with Aetna's CPBs" and where "[a] breach of fiduciary duty … [could not] be determined without comparing language from both the underlying plan and the CPB"); *Korman v. ILWU-PMA Claims Office*, 2019 WL 1324021, at *12 (C.D. Cal. March 19, 2019) (dismissing complaint under Rule 12(b)(6) where the complaints were "entirely deficient in identifying any [plan] provisions … which confer the benefits Plaintiff allegedly seeks to recover"); *In re WellPoint, Inc. Out-of-Network UCR Rates Litigation*, 865 F. Supp. 3d 1002, 1040 (C.D. Cal. 2011) (plaintiffs satisfied pleading standard only by "identif[ying] specific plan terms conferring reimbursement benefits and … alleg[ing] sufficient facts demonstrating how Defendants deprived Plaintiffs of full UCR medical benefits").

Here, Plaintiffs have not identified *any* specific plan terms that Aetna allegedly violated by denying Plaintiffs' claims. Instead, Plaintiffs refer in conclusory fashion to "the terms of Plaintiffs' plans" and "improper[]" denials of benefits. (Compl. ¶¶ 43, 48.) Plaintiffs do not include the minimum necessary information to permit Aetna or the Court to evaluate the basis for their claim that Aetna's ▮▮▮▮▮▮▮ somehow conflicts with the terms of Plaintiffs

plans or Aetna's duties under ERISA. In their first claim for relief, Plaintiffs fail to point to any specific provision of either Hendricks's or Sagalongos's plan that was supposedly violated by Aetna. (*Id.* ¶ 43.) In their second claim for relief, Plaintiffs assert that Aetna violated Section 1132(a)(3) by violating ERISA fiduciary duties, but similarly fail to identify any specific requirement of ERISA or the plans that could support a claim under Section 1132(a)(3). (*See id.* ¶ 48.) Plaintiffs' failure to identify any specific plan terms that were allegedly violated means that their complaint fails to state claims upon which relief can be granted. *See Kazda*, No. 3:19-cv-02512-WHO, Slip op. at 6-7; *Korman*, 2019 WL 1324021, at *12.

Plaintiffs' bare legal conclusions, untethered to any actual term of the benefit plans at issue in this case, do not satisfy *Twombly*. Because Plaintiffs have not proffered "enough facts to state a claim for relief that is plausible on its face[,]" s*ee Twombly*, 550 U.S. at 570, both of Plaintiffs' claims should be dismissed under Rule 12(b)(6).

## V.   CONCLUSION

For the reasons set forth above, Aetna respectfully asks that the Court dismiss Plaintiffs' complaint with prejudice.

Dated: September 30, 2019                MANATT, PHELPS & PHILLIPS, LLP


                                         By: /s/ Joseph E. Laska
                                             Joseph E. Laska
                                             Attorneys for Defendant
                                             AETNA LIFE INSURANCE
                                             COMPANY

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
San Francisco

17

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT