UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HENDRICKS and ANDREW SAGALONGOS, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> AETNA LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No.: CV 19-06840-CJC(MRWx) <br><br> ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [Dkt. 32] |

## I. INTRODUCTION

Plaintiffs Brian Hendricks and Andrew Sagalongos bring this putative class action against Defendant Aetna Life Insurance Company ("Aetna") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* Before the Court is Aetna's motion to dismiss the First Amended Complaint ("FAC") for failure

to state a claim. (Dkt. 32 [hereinafter "Mot."].) For the foregoing reasons, Aetna's motion to dismiss is **DENIED**.[1]

## II. BACKGROUND

The FAC, like Plaintiffs' original complaint, alleges the following facts. (Dkt. 31 [hereinafter "FAC"].) Aetna administers employer-sponsored health care plans for companies across the country. (*Id.* ¶ 7.) Plaintiffs are covered under employer-sponsored Aetna healthcare plans regulated by ERISA. (*Id.* ¶¶ 1, 6.) Plaintiffs suffer from degenerative disc disease in their lumbar spines (lumbosacral degenerative disc disease), which causes pain and immobility. (*Id.* ¶¶ 24, 36.) Based on their conditions and medical histories, Plaintiffs' surgeons recommended lumbar artificial disc replacement surgery ("L-ADR"). (*Id.* ¶¶ 25, 37.) Plaintiffs elected to proceed with this procedure and requested approval from Aetna. (*Id.* ¶¶ 26–27, 38–39.) L-ADR involves replacing a diseased lumbar disc with an artificial disc. (*Id.* ¶ 9.) The FDA has approved artificial discs used in this procedure, and various peer-reviewed clinical studies have shown that L-ADR can be safe and effective. (*Id.* ¶¶ 11–12.) Other major health insurance providers—including Anthem, United HealthCare, Humana, Cigna—all cover the procedure. (*Id.* ¶ 12.) Nevertheless, Aetna denied Plaintiffs' requests for L-ADR. (*Id.* ¶¶ 27, 39.)

Specifically, Aetna denied these requests based on its determination that L-ADR is "experimental and investigational" pursuant to its Clinical Policy Bulletin 0591 ("CPB 0591"). (*Id.* ¶¶ 27, 39.) Aetna's Clinical Policy Bulletins ("CPBs") are internal policy directives setting out Aetna's coverage positions for specific treatments. (*Id.* ¶ 16.) CPB

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for January 6, 2020, at 1:30 p.m. is hereby vacated and off calendar.

0591 states that L-ADR is "experimental and investigational" because it has not been proven to be effective for lumbosacral degenerative disc disease. (*Id.* ¶¶ 27, 39.) Plaintiffs and their physicians appealed this decision through Aetna's claim review process. (*Id.* ¶¶ 28, 40.) Their appeals were denied pursuant to CPB 0591. (*Id.*) Plaintiff Hendricks ultimately paid for the procedure out of his own pocket. (*Id.* ¶ 30.)

Based on these allegations, Plaintiffs bring two ERISA causes of action against Aetna on behalf of themselves and others similarly situated. (*Id.* ¶¶ 42, 54–71.)[2] They assert claims for (1) improper denial of benefits, 29 U.S.C. § 1132(a)(1)(B), and (2) breach of fiduciary duty, 29 U.S.C. § 1132(a)(3). (*Id.* ¶¶ 54–71.) Plaintiffs seek a clarification of rights, declaratory relief, class-wide injunctive relief, an accounting of profits, disgorgement, attorneys' fees, and costs. (*See id.* at 13–15.)

The Court previously granted Aetna's motion to dismiss Plaintiffs' original complaint for failure to state a claim. (Dkt. 30 [hereinafter "MTD Order"].) The Court found that the original complaint failed to sufficiently allege the terms of Plaintiffs' ERISA plans and therefore failed to state a plausible claim for relief. (*Id.* at 7.) The Court granted leave to amend, and Plaintiffs filed the operative FAC.

**III. LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with

---

[2] Specifically, Plaintiffs' proposed class includes all others covered under ERISA-eligible Aetna Plans who have had requests for L-ADR denied during the statutory period. (FAC ¶ 42.)

Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). The district court may also consider additional facts in materials of which the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994*), overruled in part on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

//
//
//
//

## IV.  DISCUSSION

### A.  Failure to Allege Specific Terms of Plaintiffs' Healthcare Plans

Aetna argues that the FAC should be dismissed because it "fails to articulate the specific, relevant terms of the plan exclusion that Plaintiffs allege Aetna improperly invoked to deny their claims." (Mot. at 5.)  The Court disagrees.

The Court set out the relevant standard in its previous order.  An ERISA claim fails if the plaintiff is not entitled to the benefits he or she seeks under the terms of the applicable plan.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).  Therefore, "[a]s a general principle, a plaintiff bringing a lawsuit seeking benefits under an ERISA plan must identify a specific plan term that confers the benefit in question." *Korman v. ILWU-PMA Claims Office*, 2019 WL 1324021, at *12 (C.D. Cal. Mar. 19, 2019) (quotations omitted).  A plaintiff need not quote or attach ERISA plan documents.  *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1040 (C.D. Cal. 2011).  However, he or she must "sufficiently identify specific plan terms" to state a plausible claim for relief.  *Id.*

The Court dismissed the original complaint because it failed to allege "the terms of [Plaintiffs'] plans that entitled them to coverage for L-ADR" and failed "to specify the type of coverage that they were allegedly denied."  (MTD Order at 7.)  The original complaint alleged generally that Plaintiffs were covered under Aetna "employee welfare benefit plans . . . that provide medical, surgical, and other services." (Dkt. 1 [Complaint, hereinafter "Compl."] ¶ 6.)  The Court found this vague description "insufficient to support their claim that the procedures were improperly denied" and dismissed the Complaint with leave to amend.  (MTD Order at 7.)

The FAC cures this deficiency.  It specifies that (1) Plaintiffs' plans are employer-funded ERISA group health plans administer by Aetna, (2) the plans "provide[ ] payment for the diagnosis, cure, mitigation, treatment, or prevention of disease, or amounts paid for the purpose of affecting any structure or function of the body," (3) the plans cover surgical and hospital services, and (4) this coverage includes the cost of the surgery, pre- and post-operative visits, second-opinion consultations, and hospital services and supplies.  (FAC ¶¶ 6, 13–15, 19–22, 31–34.)  These details suffice to support Plaintiffs' claim that Aetna improperly denied their requests for L-ADR.  *Cf. Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1155 (C.D. Cal. 2015) (dismissing an ERISA complaint because plaintiffs failed to specify the terms of the plan that allegedly covered the procedures at issue).

Aetna does not dispute that Plaintiffs have adequately alleged that their plans included coverage for back surgery to treat lumbar disc disease.  (*See* Mot. at 5.)  Instead, it argues that the FAC remains deficient because it does not include the "actual terms" of the plans' exclusion for "experimental and investigational" procedures.  (*Id.* at 5–8.)  The Court finds this argument unpersuasive.  Plaintiffs allege that Aetna misapplied the "experimental and investigational" exclusion to procedures that were otherwise covered by their plans.  It offers detailed allegations in support of its claim that L-ADR should not be considered experimental or investigational based on FDA approval and clinical studies.  (*See* FAC ¶¶ 10–12.)  At this stage, Plaintiffs need not quote the definition of Aetna's exclusion verbatim to state a plausible claim for relief.  *See In re WellPoint, Inc.*, 865 F. Supp. 2d at 1040; *Twombly*, 550 U.S. at 570.

Moreover, the FAC makes up for this lack of detail by quoting directly from Aetna's denial letters.  Aetna allegedly found the exclusion applicable to Plaintiffs' requests for L-ADR because "[c]linical studies have not proven that replacing your lumbar discs with artificial spine discs is effective to treat lumbar disc disease or other

back conditions." (FAC ¶¶ 27, 39.) In the FAC, Plaintiffs alleges that clinical studies have, in fact, shown "that L-ADR with an FDA-approved device is safe and effective" to treat lumbar disc disease. (*Id.* ¶ 12.) The parties apparently agree that the key test to determine whether a procedure is "experimental and investigational" is whether clinical studies have shown that it is safe and effective. The FAC therefore sufficiently identifies the relevant terms of Plaintiffs' healthcare plans and states a plausible claim for relief. *See In re WellPoint, Inc.*, 865 F. Supp. 2d at 1040. Aetna's motion to dismiss the FAC for failing to quote specific plan provisions is **DENIED**.

### B. Duplicative Claims

Aetna next argues that Plaintiffs' second cause of action for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) should be dismissed as duplicative of their first cause of action for denial of benefits under 29 U.S.C. § 1132(a)(1)(B). The Court disagrees.

Under section 1132(a)(1)(B), an ERISA beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 1132(a)(3) creates a broader cause of action for equitable relief and allows a beneficiary to bring an action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

The Supreme Court has described section 1132(a)(3) as a "catchall" provision that acts as "a safety net, offering appropriate equitable relief for injuries caused by violations that [section 1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Courts have interpreted this to mean that "equitable relief under

§ 1132(a)(3) is not available if § 1132(a)(1)(B) provides an adequate remedy." *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 959 (9th Cir. 2016), as amended on denial of reh'g and reh'g en banc (Aug. 18, 2016).

In *Moyle v. Liberty Mutual Retirement Benefit Plan*, the Ninth Circuit squarely addressed whether a plaintiff can seek relief under both subsections at the pleading stage. 823 F.3d at 959–65. It concluded that a plaintiff *can* pursue simultaneous claims under section 1132(a)(1)(B) and section 1132(a)(3), "so long as there is no double recovery." *Id.* at 961. In other words, a plaintiff can plead both causes of action "as alternative—rather than duplicative—theories of liability." *Id.* The court grounded this decision in the Federal Rules of Civil Procedure, which allow plaintiffs to plead alternative claims for relief, *see* Fed. R. Civ. P. 8(a)(3), and in "ERISA's intended purpose of protecting participants' and beneficiaries' interests," *see Moyle*, 823 F.3d. at 962. District courts interpreting *Moyle* have allowed plaintiffs to pursue claims under both section 1132(a)(1)(B) and section 1132(a)(3)—even if based on the same underlying misconduct—if they properly allege alternative theories of liability and/or seek alternative remedies. *See, e.g.*, *Wittrock v. Danaher Corp.*, 2018 WL 6177251, at *3 (C.D. Cal. Apr. 23, 2018); *Kazda v. Aetna Life Ins. Co.*, 2019 WL 6716306, at *4 (N.D. Cal. Dec. 10, 2019).

Plaintiffs have adequately pleaded an alternative theory of liability under section 1132(a)(3).[3] To state a claim under this subsection, "the defendant must be an ERISA fiduciary acting in its fiduciary capacity" and must violate "ERISA-imposed fiduciary obligations." *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004) (internal citations and quotation marks omitted). A claims administrator, like Aetna, acts as a

---

[3] In the Court's previous order, it found that Plaintiffs' breach of fiduciary duty claim, like its denial of benefits claim, "depends on [Plaintiffs'] entitlement to L-ADR." (MTD Order at 7.) Contrary to Aetna's interpretation of this finding, the Court did *not* conclude that these claims were identical, and Aetna did not raise the redundancy of Plaintiffs' claims in its first motion to dismiss.

fiduciary when exercising discretionary responsibility. *See* 29 U.S.C. § 1002(21)(A); *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421–1422 (9th Cir. 1997). Specifically, it exercises fiduciary responsibility when creating internal guidelines that will determine the scope of coverage. *See Kazda*, 2019 WL 6716306, at *4; *Alexander v. United Behavioral Health*, 2015 WL 1843830, at *6–7 (N.D. Cal. Apr. 7, 2015). A claims administrator breaches its fiduciary obligations if it fails to administer the plan "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan" or fails to exercise reasonable "care, skill, prudence, and diligence under the circumstances." 29 U.S.C. § 1104(a).

Plaintiffs allege that Aetna violated its fiduciary obligations by (1) erroneously classifying L-ADR as experimental and investigational in CPB 0591, (2) implementing this exclusion on a class-wide basis, and (3) failing to provide a sufficient explanation of "the scientific or clinical judgment for its 'experimental and investigational' denial[s]," as required under ERISA regulations.[4] (FAC ¶ 68–70.) This presents a related—but slightly different—theory of liability from Plaintiffs' denial of benefits claim. Notably, it seeks to hold Aetna liable for failing to exercise due diligence in its CPB 0591 determination and for failing to justify the exclusion in its denial letters. The Court finds that Plaintiffs have properly alleged a breach of fiduciary duty and an alternative theory of liability under section 1132(a)(3).[5]

Plaintiffs' fiduciary duty claim also seeks alternative relief. Among other things, Plaintiffs request an injunction requiring Aetna "to reevaluate and reprocess prior

---

[4] Under 29 C.F.R. § 2560.503-1(g)(1)(v)(B), if a claims administrator's adverse benefit determination is based on an experimental treatment exclusion, it must provide "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request."

[5] Aetna challenges Plaintiffs' fiduciary duty claim as duplicative of its first cause of action but does not otherwise argue that Plaintiffs failed to state a claim under section 1132(a)(3).

denials" based on the allegedly erroneous determination in CPB 0591 and to provide notice of this process to previously denied claimants. (FAC ¶ 71). This injunctive relief addresses allegations of systemic problems in Aetna's claims administration and therefore may not be available under section 1132(a)(1)(B). *See Kazda*, 2019 WL 6716306 at *7 (finding that a request for injunction to reform claims adjudication process under section 1132(a)(3) was not duplicative of relief sought under section 1132(a)(1)(B)). Plaintiffs will ultimately bear the burden of justifying the relief they seek, and the Court declines to limit the scope of possible remedies at this stage of the proceedings. *See Wittrock*, 2018 WL 6177251, at *3. Plaintiffs are entitled to plead alternative theories of liability and alternative claims for relief. *See id.* Accordingly, Aetna's motion to dismiss Plaintiffs' second cause of action is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, Aetna's motion to dismiss is **DENIED**.

DATED: December 26, 2019

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE