1 | ROBERT S. GIANELLI, #82116
2 | JOSHUA S. DAVIS, #193187
  | ADRIAN J. BARRIO, #219266
3 | GIANELLI & MORRIS, A Law Corporation
  | 550 South Hope Street, Suite 1645
4 | Los Angeles, CA 90071
5 | Tel: (213) 489-1600; Fax: (213) 489-1611
  | rob.gianelli@gmlawyers.com
6 | joshua.davis@gmlawyers.com
7 | adrian.barrio@gmlawyers.com

8 | Attorneys for Plaintiffs
9 | BRIAN HENDRICKS;
  | ANDREW SAGALONGOS
10 | CHAD WASHBURN

11

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HENDRICKS; ANDREW SAGALONGOS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY;<br><br>Defendant. | Case No.: 2:19-cv-6840-CJC (MRWx)<br>Assigned to Hon. Cormac J. Carney<br><br>**NOTICE OF MOTION AND MOTION TO CERTIFY CLASS ACTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[REDACTED]**<br><br>Date: May 10, 2021<br>Time: 1:30 p.m.<br>Place: Courtroom 9B |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 10, 2021 at 1:30 p.m., in Courtroom 9B of the above-entitled Court, Plaintiffs Brian Hendricks, Andrew Sagalongos, and Chad Washburn ("Plaintiffs") will move the Court for an order, pursuant to Rules 23(a), (b)(1) and (b)(2) of the Federal Rules of Civil Procedure, certifying the following Class:

> All persons covered under Aetna Plans, governed by ERISA, self-funded or fully insured, whose requests for lumbar artificial disc replacement surgery were denied at any time within the applicable statute of limitations, or whose requests for that surgery will be denied in the future, on the ground that lumbar artificial disc replacement surgery is experimental or investigational.

Plaintiffs also request that the Court appoint them as class representatives and appoint their counsel as Class Counsel. This motion is based on this notice, the attached memorandum of points and authorities, the supporting declarations, the Appendix of Exhibits filed herewith, the Court's files and records, and such oral arguments that may be heard at the hearing on this motion.

DATED:  March 5, 2021                          GIANELLI & MORRIS


By:   /s/ Adrian J. Barrio
          ROBERT S. GIANELLI
          JOSHUA S. DAVIS
          ADRIAN J. BARRIO
          Attorneys for Plaintiffs,
          BRIAN HENDRICKS
          ANDREW SAGALONGOS
          CHAD WASHBURN

# **TABLE OF CONTENTS**

*Page*

MEMORANDUM OF POINTS AND AUTHORITIES…………………………………...1

I.   INTRODUCTION…………………………………………………………...1

II.   STATEMENT OF FACTS……………………………………………………..2

    A.   Plaintiffs' and the class members' relationship to Aetna………………..2

    B.   L-ADR…………………………………………………………………..2

    C.   Aetna's categorical denial of requests for L-ADR……………………...5

        1.   Relevant plan terms…………………………………...……..5

        2.   Aetna's application of CPB 0591 to deny claims for L-ADR across the board…………………………………………..5

    D.   Aetna's denials of Plaintiffs' claims for L-ADR……………………..7

        1.   Plaintiff Brian Hendricks………………………………………7

        2.   Plaintiff Andrew Sagalongos………………………………….9

        3.   Plaintiff Chad Washburn……………………………………..10

III.   ARGUMENT……………………………………………………………….11

    A.   Rule 23 requirements………………………………………………..11

    B.   Rule 23(a) requirements……………………………………………..12

        1.   Numerosity…………………………………………………..12

        2.   Commonality………………………………………………..13

            a.   The commonality standard under Rule 23(a) is extremely liberal……………………………………………..13

            b.   Two federal district courts have found that the practice of categorically denying claims for L-ADR raises a common question…………………………………………….14

            c.   Plaintiffs' ERISA claims raise at least one common question…………………………………………….15

            d.   Aetna's anticipated commonality arguments lack merit…17

i

# **TABLE OF CONTENTS**

*Page*

3.    Typicality………………………………………………..18

4.    Adequacy………………………………………………19

C.    Rule 23(b) requirements…………………………………………21

1.    Rule 23(b)(1)…………………………………………21

2.    Rule 23(b)(2)…………………………………………22

D.    Ascertainability………………………………………………...23

IV.    CONCLUSION………………………………………………24

# <u>TABLE OF AUTHORITIES</u>

*Cases*                                                                    *Page(s)*

*A.F. ex rel Legaard v. Providence Health Plan*,
    300 F.R.D. 474 (D. Or. 2013)……………………………………...……15

*Abatie v. Alta Health & Life Ins. Co.*,
    458 F.3d 955 (9th Cir. 2006)……………………………………….………20

*Abramovitz v. Ahern*,
    96 F.R.D. 208 (D. Conn. 1982)……………………………………………22

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001)……………………………………….…..18

*Arnold v. United Theatre Circuit, Inc.*,
    158 F.R.D. 439 (N.D. Cal. 1994)………………………………….…..23

*Baby Neal for and by Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994)……………………………………….……23

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017)………………………………………..24

*Bublitz v. E.I. DuPont de Nemours and Co.*,
    202 F.R.D. 251 (S.D. Iowa 2001)……………………………...……12,13

*Des Roches v. California Physicians' Service*,
    320 F.R.D. 486 (N.D. Cal. 2017)………………………………15-18,20

*Disability Rights Council of Greater Washington v.*
*Washington Metropolitan Area Transit Authority*,
    239 F.R.D. 9 (D.D.C. 2006)………………………………………….…13

*Escalante v. California Physicians Service dba Blue Shield of California*,
    309 F.R.D. 612 (C.D. Cal. 2015)……………………………...……*passim*

*Gen. Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982)………………………………………………………19

*Gooch v. Life investors Insurance Co. of America*,
    672 F.3d 402 (6th Cir. 2012)………………………………….……..16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir.1998)……………………………………...13,18

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992)………………………………...……..19

*Harlick v. Blue Shield of California*,
    686 F.3d 699 (9th Cir. 2012)…………………………………………17

# <u>TABLE OF AUTHORITIES</u>

*Cases*                                                                                   *Page(s)*

*Hill v. UnitedHealthcare Insurance Company*,
 Case No. SACV 5-0526-DOC (RNBx), 2017 WL 7038128
 (C.D. Cal. March 21, 2017)...............................................................1,14,15,20,21

*Horn v. Associated Wholesale Grocers, Inc.*,
 555 F.2d 270 (10th Cir. 1977)...........................................................................11

*Jackson v. Danberg*,
 240 F.R.D. 145 (D. Del. 2007)......................................................................12,13

*Johnson v. California*,
 543 U.S. 499 (2005).............................................................................................18

*Just Film, Inc. v. Buono*,
 847 F.3d 1108 (9th Cir. 2017).............................................................................18

*Kleiner v. First Nat'l Bank of Atlanta*,
 97 F.R.D. 683 (N.D. Ga. 1983)...........................................................................16

*Mazza v. Am. Honda Motor Co.*,
 666 F.3d 581 (9th Cir. 2012)...............................................................................13

*McMillon v. State of Hawaii*,
 261 F.R.D. 536 (D. Haw. 2009)..........................................................................12

*Meidl v. Aetna, Inc.*,
 No. 3:15–CV–01319, 2017 WL 1831916 (D. Conn. May 4, 2017)...........18,20

*Menagerie Productions v. Citysearch*,
 2009 WL 3770668 (C.D. Cal. 2009)....................................................................16

*Moeller v. Taco Bell Corporation*,
 220 F.R.D. 604 (N.D. Cal. 2004)...................................................................12,23

*Negrete v. Allianz Life Ins. Co. of North America*,
 287 F.R.D. 590 (C.D. Cal. 2012).........................................................................19

*Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625*,
 856 F.3d 686 (9th Cir. 2017)...........................................................................20

*Parra v. Bashas', Inc.*,
 536 F.3d 975 (9th Cir. 2008)...........................................................................13

*Parsons v. Ryan*,
 754 F.3d 657 (9th Cir. 2014).........................................................13,18,22,23

*Riegel v. Medtronic*,
 552 U.S. 312 (2008).............................................................................................3,4

*Robertson v. National Basketball Ass'n*,
 556 F.2d 682 (2d Cir. 1977)..............................................................................22

iv

# <u>TABLE OF AUTHORITIES</u>

*Cases*                                                                                                                     *Page(s)*

*Rodriguez v. Hayes*,
 591 F.3d 1105 (9th Cir. 2009)……………………………………..……….14

*Saffle v. Sierra Pac. Power Co. Bargaining Unit*
*Long Term Disability Income Plan*,
 85 F.3d 455 (9th Cir. 1996)……………………………….………16,17

*Shelton v. Bledsoe*,
 775 F.3d 554 (3d Cir. 2015)……………………………………..23

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003)………………………………19

*Williby v. Aetna Life Ins. Co.*,
 867 F.3d 1129 (9th Cir. 2017)…………………………20

*Wit v. United Behavioral Health*,
 317 F.R.D. 106 (N.D. Cal. 2016)……………………..……15

*Z.D. ex rel. J.D. v. Group Health Cooperative*,
2012 WL 1977962 (W.D. Wash. June 1, 2012)…………………………15

*Zinser v. Accufix Research Institute, Inc.*,
 253 F.3d 1180 (9th Cir. 2001)………………………...21

***Regulations***

21 C.F.R.

 § 812.20………………………………………………………4
 § 812.25………………………………………………………4
 § 814.20……………………………………………………3

29 C.F.R.

 § 2560.503-1…………………………………………..………5,22

***Statutes***

21 U.S.C.

 § 360…………………………………………………..………4

29 U.S.C.

 § 1132…………………………………………………...15,16

Federal Rules of Civil Procedure

 Rule 23……………………………………………..……….*Passim*

# **TABLE OF AUTHORITIES**

*Page(s)*

***Treatises***

*Federal Practice and Procedure* § 1763 (3d ed. 2006)…………………………..…..13

*Manual for Complex Litigation, Fourth* at section 21.222 (2004)…………..……23,24

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs seek to certify a class of ERISA claimants whose requests for lumbar artificial disc replacement surgery ("L-ADR") have been and will be denied by Defendant Aetna Life Insurance Company ("Aetna") on the basis the surgery is "experimental and investigational."

Two judges of the Central District, Judges Dean Pregerson and David O. Carter, granted class certification in cases presenting the same fact pattern that is presented here regarding the denial of L-ADR claims. *Escalante v. Blue Shield of California*, 309 F.R.D. 612 (C.D. Cal. 2015) (Pregerson, J.); *Hill v. UnitedHealthcare Insurance Company*, Case No. SACV 5-0526-DOC (RNBx), 2017 WL 7038128 (C.D. Cal. March 21, 2017) (Carter, J.).[1]

Like the health insurers in *Escalante* and *Hill*, Aetna relies on an extra-contractual, written coverage directive, its version titled "Intervertebral Disc Prostheses" (CPB 0591), that erroneously designates L-ADR as "experimental and investigational" for all indications. Aetna has applied CPB 0591 to deny hundreds of member claims for L-ADR across the country on a categorical basis, i.e., without regard to a member's pain, immobility or other individualized medical circumstances. CPB 0591 is ironclad, and admittedly contains no exceptions.

Contrary to Aetna's position, L-ADR has been found safe and effective by the United States Food and Drug Administration ("FDA"), has long been recognized by the medical community and medical societies as safe and effective, and is regularly performed in leading medical centers throughout the country. It is supported by a mountain of clinical evidence and spine surgeons' recommendation of this surgery to their patients is well within their standard of care.

---

[1] Both courts later granted final approval of class settlements that included sweeping changes to the insurer's claims practices for L-ADR—changes which included retraction of the erroneous "investigational" or "unproven" coverage position and re-review of the improperly denied claims.

Plaintiffs Brian Hendricks, Andrew Sagalongos, and Chad Washburn are Aetna insureds who suffer from lumbar disc disease and whose physicians recommended that they undergo L-ADR. Pursuant to CPB 0591, Aetna has denied Plaintiffs' request for L-ADR on the ground that L-ADR is "experimental and investigational." Aetna did not consider Plaintiffs' individual medical need for the surgery. Aetna denied Plaintiffs' appeals on the same basis. As a result, Plaintiffs were presented with the Hobson's choice of paying tens of thousands for L-ADR and related medical expenses out of their own pocket (the "choice" made by Plaintiff Hendricks) or continuing to suffer the debilitating effects of their degenerative disc disease (the "choices" of Plaintiffs Sagalongos and Washburn).

Plaintiffs now seek to certify a class of similarly-situated Aetna members under Rule 23(b)(1) and Rule 23(b)(2) of the Federal Rules of Civil Procedure. The facts of this case meet class certification requirements, and the specific requirements of these subsections, because Aetna's common practice is to deny requests for L-ADR on the grounds it is "experimental and investigational." As a result, the claims of all putative class members are identical and amenable to resolution in a single action.

## II. STATEMENT OF FACTS

### A. Plaintiffs' and the class members' relationship to Aetna.

At all times relevant, Plaintiffs Brian Hendricks, Andrew Sagalongos, and Chad Washburn (collectively, "Plaintiffs") and the members of the class were covered by a health policy or plan, either self-funded or fully insured, administered by Aetna which provided medical and surgical benefits. (Third Amended Complaint ("TAC"), Dkt. 55, at paras. 19, 20, 31, 32, 42, 43; Hendricks Decl. at para. 3; Sagalongos Decl. at para. 3; Washburn Decl. at para. 3; Exs. 1, 4, 7.) The health plan sets forth the terms and conditions of coverage.

### B. L-ADR.

Traditionally, surgeons recommended a procedure known as a spinal fusion to treat degenerative lumbar disc disease. (TAC at para. 8.) Fusion, however, causes a

lack of mobility at the fused disc level and, consequently, more stress on the adjacent disc levels, leading to a greater risk of additional disc herniation/disease. (*Id*.)

With L-ADR, the diseased disc is replaced with an artificial disc that maintains the integrity of the disc space while providing the flexibility of a natural disc. (TAC at para. 9.) Use of the artificial disc maintains the integrity of the disc space while providing the flexibility of a natural disc. (*Id*.)

L-ADR has been an accepted and effective treatment for degenerative lumbar disc disease for over sixteen years in the United States. Disc implantation via surgery was first approved for use in the general patient population in 2004, when the Charité Artificial Disc received FDA approval. (TAC at para. 10; Ex. 29, Charite Premarket Approval Letter.) Two years later, the FDA approved the ProDisc-L Total Disc Replacement (Synthes Spine) artificial disc for use in lumbar ADR.  (TAC at ¶ 10; *see also* Ex. 30, ProDisc-L Premarket Approval Letter.) In 2015, the FDA approved the activL device. (TAC at ¶ 10; *see also* Ex. 31, activL Premarket Approval Letter.)

The Premarket Approval (PMA) process is rigorous and applies to all Class III medical devices such as the ProDisc-L. (TAC at ¶ 11.) *Riegel v. Medtronic*, 552 U.S. 312, 317 (2008). Class III medical devices are devices which, by definition, present significant risks to human health. (TAC at ¶ 11.) *Riegel*, *supra*, 552 U.S. at 316. These devices must therefore meet the FDA's most stringent safety standards before they are approved for commercial sale and distribution. (TAC at ¶ 11.) *Riegel*, *supra*, 552 U.S. at 317-318.

The PMA process requires, among other things, a multivolume application containing full reports of all studies and investigations of the device's safety and effectiveness that have been published or should reasonably be known to the applicant;[2] a "full statement" of the device's "components, ingredients, and properties and of the principle or principles of operation"; "a full description of the methods used

---

[2]  This requirement ordinarily entails several clinical investigations, since if the sponsor has data only from one clinical investigation, it must demonstrate that this single investigation produced enough information to demonstrate the safety and effectiveness of the device. *See* 21 C.F.R. § 814.20(b)(7).

in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of, such device"; samples or device components required by the FDA; and a specimen of the proposed labeling. *Riegel, supra,* 552 U.S. at 317-318 (citing 21 U.S.C. § 360e(c)(1).)

One of the main components of a PMA is a clinical (human) trial to test the device for safety and effectiveness. The sponsor of a Class III medical device must submit an application for an IDE to the FDA to perform a clinical trial with their device. *See* 21 C.F.R. § 812.20(a)(1). As part of the IDE application, the sponsor must submit an "investigational plan" that describes, among other things, "the methodology to be used and an analysis of the protocol demonstrating that the investigation is scientifically sound." 21 C.F.R. § 812.25(b).

The FDA spends an average of 1,200 hours reviewing each application and grants PMA only if it finds there is a "'reasonable assurance' of the device's 'safety and effectiveness.'" *Riegel*, 552 U.S. at 318 (citing 21 U.S.C. § 360e(d).) The agency must "weig[h] any probable benefit to health from the use of the device against any probable risk of injury or illness from such use." *Id*. (citing 21 U.S.C. § 360c(a)(2)(C).)

Numerous published peer-reviewed articles of controlled clinical trials establish that L-ADR with an FDA-approved device is safe and effective. (TAC at para. 12.) L-ADR is widely recognized in the medical community and by providers throughout the nation as a viable, safe and effective treatment for degenerative disc disease. FDA-approved artificial discs have been used in thousands of spinal arthroplasties. (*Id*.) Medical Societies such as the North American Spine Society have endorsed the surgery and it is performed at leading medical centers across the country, including the Cedars-Sinai Medical Center, University of California at San Francisco, Stanford University and the University of California at San Diego. (TAC at para. 12.) All major health insurers other than Aetna (Anthem, United HealthCare, Humana, Cigna) cover the surgery. (Davis Decl. at paras. 24-27; Exs. 32, 33, 34, 35.)

4

**C.     Aetna's categorical denial of requests for L-ADR.**

    **1.     Relevant plan terms.**

Aetna's contracts contain a standard exclusion for services or supplies that are "Experimental or investigational." In relevant part, "experimental or investigational" is defined in the plans as follows: "A drug, a device, a procedure or treatment will be determined to be experimental or investigational if ... [t]here are insufficient outcomes data available from controlled clinical trials published in the peer-reviewed literature to substantiate its safety and effectiveness for the illness." (Ex. 1 at 79; Ex. 4 at 234; Ex. 7 at 340; Ex. 11.)

All of Aetna's ERISA-governed (non-HMO) plans, self-funded and fully insured,[3] contain the same definitional language. (Ex. 11; Ex. 12 at 424-425, 426-427; Ex. 13 at 445; Ex. 14 at 472-473, 474-475; Ex. 15 at 498, 499-500; Ex. 16 at 542.)

    **2.     Aetna's application of CPB 0591 to deny claims for L-ADR across the board.**

Aetna has developed internal Clinical Policy Bulletins ("CPB"), that is, extra-contractual written directives on coverage positions Aetna takes with respect to certain medical treatments. The purpose of the CPBs is to "make sure that similarly situated claimants are treated consistently[.]"[4] (Ex. 13 at 447.)

Prior to 2013, Aetna covered L-ADR when it determined the surgery was medically necessary. (Ex. 12 at 405; 406-407, 408, 409; Exs. 18, 19, 20.) Aetna admits, however, that it reversed its coverage position in 2013 *after conducting an evaluation and assessment of the high cost of providing L-ADR*.[5] (Ex. 12 at 403-404, 414.)

---

[3] In a self-insured plan, the payment of claims is funded by Aetna. In a self-funded plan, by contrast, the employer group  pays claims. (Ex. 13 at 446.) The employer group "enter[s] into a contract with Aetna where [Aetna] will review and decide claims pursuant to their summary plan description." (*Id*.)

[4] ERISA claim regulations provide that health plans must treat all similarly situated members consistently. 29 C.F.R. section 2560.503-1(b)(5).

[5] Ironically, this was around the time that other national insurers were beginning to cover L-ADR.

On September 16, 2013, Aetna adopted CPB 0591. Titled "Intervertebral Disc Prostheses," CPB 0591 sets forth Aetna's coverage position on L-ADR. It provides, in pertinent part:

> Aetna considers lumbar prosthetic intervertebral discs (e.g., the activL Artificial Disc, the Charité Artificial Disc, and the ProDisc-L Total Disc Replacement) experimental and investigational for lumbosacral degenerative disc disease and for all other indications.

 (Ex. 21 at 606.)

All subsequent versions of CPB 0591 adopted by Aetna, through the current version last reviewed on July 20, 2020, uniformly state that L-ADR is "experimental and investigational" and therefore not covered. (Ex. 12 at 410-411, 412-413; *see also* Exs. 21-25.)

Despite FDA premarket approval and the existence of numerous clinical studies substantiating L-ADR's short *and* long term safety and effectiveness, the "primary basis" for the experimental designation in CPB 0591 is the purported lack of clinical data "published in peer-reviewed literature to substantiate [L-ADR's] safety and effectiveness[.]" (Ex. 12 at 428.) Consistent with that rationale, Aetna applies CPB 0591 regardless of the member's individual medical profile or individual medical need for the surgery. According to Aetna's Rule 30(b)(6) witness, CPB 0591 applies to bar coverage "in all circumstances," does "not have any medical necessity criteria," and has "no exceptions." (Ex. 12 at 415, 416-417; *see also* Ex. 13 at 449-450; Ex. 14 at 476-477; Ex. 15 at 501-502; Ex. 16 at 533-535.)

Applying CPB 0591, Aetna has categorically denied coverage for L-ADR on the ground that it is an "experimental and investigational" procedure excluded under its plans. Aetna's claim reviewers are trained to deny all L-ADR claims on the basis of CPB 0591. (Ex. 13 at 442-443; Ex. 15 at 497.) They do not perform any independent clinical research and instead rely wholly on the clinical research and factual findings contained in CPB 0591. (Ex. 13 at 443-444; Ex. 14 at 468-470; 483; 484; Ex. 16 at 530-531; Ex. 17 at 557.) The reliance on CPB 0591 is so total that in many cases

Aetna's reviewers do not even bother to reference plan terms. (Ex. 14 at 478, 481-482 ["█████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████."]; Ex. 15 at 516-517.)

Aetna's training regarding CPB 0591 applies to claims brought under Aetna's fully insured plans and self-funded plans. (Ex. 13 at 445.) It also applies at each level of the claim review process. (Ex. 12 at 418-419, 421, 422-423 [Aetna's 30(b)(6) witness could not recall a single instance where a denial of coverage for L-ADR on "experimental and investigational" grounds was overturned on appeal or via "escalation" channels, i.e., claim reviewer consultation with senior level medical directors]; Ex. 14 at 461, 471; Ex. 15 at 492, 493-494.) Effectively, therefore, L-ADR is "███████████" by Aetna. (Ex. 17 at 562-563.)

## D. Aetna's denials of Plaintiffs' claims for L-ADR.

### 1. Plaintiff Brian Hendricks.

At all relevant times, Plaintiff Brian Hendricks ("Mr. Hendricks") was covered under the terms of the Aetna Choice POS, WPP Group USA, Inc. Benefit Plan through his employer. ("WPP Plan"). (Hendricks Decl. at para. 3; Ex. 1.) The WPP Plan was a self-funded plan administered by Aetna. (Hendricks Decl. at para. 3; Ex. 1.)

Mr. Hendricks suffered from disc disease at the L5-S1 level of his lumbar spine that caused him significant pain and immobility. (Hendricks Decl. at para. 4.) Conservative measures such as medication and corrective exercises did not help to relieve these symptoms or the further degeneration of his spine condition. (*Id.*)

After confirming his condition on MRI, and conducting a history and physical, Dr. Jason Cuellar, a board-certified spine surgeon and Assistant Professor of Orthopaedic Surgery at Cedars-Sinai Medical Center in Los Angeles, CA recommended that Mr. Hendricks undergo L-ADR. (*Id.* at para. 5.) Mr. Hendricks

elected to proceed with the procedure and a request was made of Aetna to preauthorize coverage for the L-ADR.[6] (*Id.* at paras. 5, 6.)

On April 29, 2019, Aetna sent Mr. Hendricks a letter denying his request for coverage for the L-ADR. (*Id.* at para. 7; Ex. 2.) The letter provided that Aetna was denying Mr. Hendricks' request for L-ADR because it was experimental and investigational pursuant to Aetna's Coverage Policy Bulletin on Intervertebral Disc Prosthesis. (*Id.* at para. 7; Ex. 2.) Mr. Hendrick's denial letter does not "identify any specific issues with his medical profile" nor does it make reference to any other individualized "clinical information." (Ex. 12 at 420.)

Mr. Hendricks and his physician appealed this decision. (Hendricks Decl. at para. 8.) On June 27, 2019, Aetna sent Mr. Hendricks a letter rejecting the appeal and affirming its initial denial of his request to cover the L-ADR surgery on the basis that L-ADR is experimental and investigational under CPB 0591. (*Id.*; Ex. 3; Ex. 14 at 480.)

Aetna handled Mr. Hendricks' request for L-ADR in accordance with the "way and manner" that Aetna personnel were trained to handle such requests. (Ex. 13 at 448; Ex. 14 at 478.) Aetna "treated him the same" as other Aetna members. (Ex. 13 at 448; Ex. 15 at 478-479.)

As a result of Aetna's coverage denial, Mr. Hendricks paid thousands of dollars out of pocket for his L-ADR surgery, which was performed by Dr. Brian Perri, a board certified spine surgeon. (Hendricks Decl. at para. 9.)

### 2.    Plaintiff Andrew Sagalongos.

At all relevant times, Plaintiff Andrew Sagalongos ("Mr. Sagalongos") was covered under the terms of a self-funded group health plan issued by his employer, Quest Diagnostics, Inc. (the "Quest Plan"), which was administered by Aetna. (Sagalongos Decl. at para. 3; Ex. 4.)

---

[6] L-ADR requires preauthorization, i.e., authorization by Aetna before the service is performed. (Ex. 13 at 440.) Failure to obtain preauthorization can itself serve as the basis for a denial of a reimbursement request. (*Id.* at 440-441.)

Mr. Sagalongos suffered from disc disease at the L5-S1 level of his lumbar spine that has caused him significant pain and immobility for 13 years. (*Id*. at para. 5.) Conservative measures such as medication and corrective exercises have not helped to relieve these symptoms or the further degeneration of his spine condition. (*Id*.)

After confirming his condition on MRI, and conducting a history and physical, Dr. Robert Jackson, M.D., a board certified neurosurgeon, recommended that Mr. Sagalongos undergo L-ADR. (*Id*. at para. 6.) Mr. Sagalongos elected to proceed with the procedure. (*Id*.) Request was made of Aetna, the claims administrator, to precertify coverage for the L-ADR. (*Id*. at para. 7.)

On July 5, 2019, Aetna sent Mr. Sagalongos a letter advising that it had denied his request for L-ADR because Aetna considered L-ADR experimental and investigational pursuant to Aetna's Coverage Policy Bulletin on Intervertebral Disc Prosthesis. (*Id*. at para. 8; Ex. 5; Ex. 16 at 528, 538-539, 540-541.) The denial letter does not reference or discuss Mr. Sagalongos' medical need for the surgery, or identify any individual medical characteristics that contributed to the denial. (Ex. 5.)

Mr. Sagalongos appealed Aetna's decision. (Sagalongos Decl. at para. 9.) On July 24, 2019, Aetna sent Mr. Sagalongos a letter rejecting the appeal and affirming its initial denial of his request for L-ADR. (*Id*.; Ex. 6; Rose Depo. at 502-503, 508, 509, 510, 511-513 [appeal denied on the basis of CPB 0591].)

In denying his request for L-ADR, Aetna treated Mr. Sagalongos the same way it treats other similarly situated Aetna members. (Ex. 16 at 536-537; Ex. 15 at 507.)

### 3. Plaintiff Chad Washburn.

At all relevant times, Plaintiff Chad Washburn ("Mr. Washburn") was covered under a group health plan, an Aetna Choice POS II benefit option, offered by his employer, Walla Walla University ("Walla Walla Plan"). (Washburn Decl. at para. 3; Ex. 7.) The Walla Walla Plan is a self-funded plan, which is administered by Defendant Aetna Life Insurance Company ("Aetna"). (Washburn Decl. at para. 3; Ex. 7.)

Mr. Washburn suffered from disc disease at the L5-S1 level of his lumbar spine that caused significant pain and immobility. (Washburn Decl. at para. 5.) Conservative measures such as medication and corrective exercises did not help to relieve these symptoms or the further degeneration of my spine condition. (*Id*.)

After confirming his condition on MRI, and conducting a history and physical, Dr. Melvin Wahl, a board-certified orthopaedic surgeon, recommended that Mr. Washburn undergo L-ADR. (*Id*. at para. 6.) Mr. Washburn elected to proceed with the procedure. (*Id*.) Request was made of Aetna, the claims administrator, to precertify coverage for the L-ADR. (*Id*. at para. 7.)

On November 4, 2020, Aetna sent Mr. Washburn a letter advising that it had denied his request for L-ADR because Aetna considered L-ADR experimental and investigational pursuant to Aetna's Coverage Policy Bulletin on Intervertebral Disc Prosthesis. (*Id*. at para. 8; Ex. 8; Ex. 17 at 553-554.) The denial letter does not reference or discuss Mr. Washburn's medical need for the surgery, or identify any individual medical characteristics that contributed to the denial. (Ex. 8.)

Mr. Washburn and his physician appealed Aetna's decision. (Washburn Decl. at para. 9.) On November 18, 2020, Aetna sent Mr. Washburn a letter rejecting the appeal and affirming its initial denial of his request for L-ADR. (*Id*.; Ex. 9; Ex. 17 at 558-559.)

Mr. Washburn made a second level appeal following the rejection of his first level appeal. (Washburn Decl. at para. 10.) On December 28, 2020, Aetna sent Mr. Washburn a letter rejecting his second level appeal and affirmed its prior denials of his request for L-ADR surgery. (*Id*.; Ex. 10.) Aetna denied the second-level appeal on the same grounds (CPB 0591) as the initial denial and the first level appeal. (Ex. 17 at 560-561.)

## III. ARGUMENT

### A. Rule 23 requirements.

Plaintiffs seek certification of the following class:

All persons covered under Aetna Plans, governed by ERISA, self-funded or fully insured, whose requests for lumbar artificial disc replacement surgery were denied at any time within the applicable statute of limitations, or whose requests for that surgery will be denied in the future, on the ground that lumbar artificial disc replacement surgery is experimental or investigational.

To maintain a class action under Rule 23, the requirements of Rule 23(a) must first be established. Under Rule 23(a), a class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). In addition to the Rule 23(a) requirements, at least one of the three subsections of Rule 23(b) must be met.

Here, Plaintiffs are seeking to certify the proposed class under Rule 23(b)(1) and Rule 23(b)(2). As discussed in detail below, because Plaintiffs and the class are seeking declaratory and injunctive relief (the only relief available under these subsections), the class certification requirements set forth in Rule 23(a) are considerably relaxed. *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (noting that a "permissive attitude is reflected by an apparent liberalized application of the Rule 23(a) prerequisites" in cases where the proposed class seeks declaratory and injunctive relief).

**B.    Rule 23(a) requirements.**

**1.    Numerosity.**

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. *Moeller v. Taco Bell Corporation*, 220 F.R.D. 604, 608 (N.D. Cal. 2004). Aetna admits that the numerosity requirement is satisfied. (*See* Ex. 26 at Response to Request for Admission No. 14.) Specifically, Aetna admits that it denied a "minimum" of 283 requests for L-ADR on "experimental and investigational"

grounds since August 7, 2015. (Ex. 27 at Response to Interrogatories 8 and 9.)[7] Aetna identified an additional 99 requests for L-ADR that "may have been denied" on "experimental and investigational" grounds in that time period, for a total of 382 denials. (*Id.*)[8]

The cases uniformly hold that "courts have relaxed the numerosity requirement when the plaintiffs seek certification pursuant to Rule 23(b)(2)." *Bublitz v. E.I. DuPont de Nemours and Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001). *See also Jackson v. Danberg*, 240 F.R.D. 145, 147 (D. Del. 2007). Aetna's admitted denials, numbering in the hundreds, easily satisfy this relaxed standard. *See, e.g., Escalante v. California Physicians Service dba Blue Shield of California*, 309 F.R.D. 612, 618 (C.D. Cal. 2015) (numerosity satisfied "even presuming a class of 19" due to the nature of relief sought); *McMillon v. State of Hawaii,* 261 F.R.D. 536, 543 (D. Haw. 2009) (finding the numerosity requirement satisfied where the putative class consisted of 10 identifiable members, as well as future, unidentified members); *Jackson, supra,* 240 F.R.D. at 147 (16 members enough); *Bublitz, supra,* 202 F.R.D. at 256 (17 members enough).

### 2.    Commonality

#### a.    The commonality standard under Rule 23(a) is extremely liberal.

Rule 23(a)(2) requires that there be questions of law or fact that are common to the class. Rule 23 does not require that all questions of law and fact be common to all class members. *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008). In fact, *only one* question of law or fact must be common to the proposed class. *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589

---

[7] Aetna identified a minimum of 236 precertification or post-service denials with respect to its self-insured plans, and a minimum of 47 precertification or post-service denials with respect to its fully insured plans, for a total of 283 denials. (Ex. 27 at Response to Interrogatories 8 and 9.)

[8] Aetna "may have" used an alternative subset of "denial reason codes" to deny precertification requests or post-service claims for L-ADR made under its self-insured and fully insured plans. (Ex. 27 at Response to Interrogatories 8 and 9.)

(9th Cir. 2012). Plaintiff is *not* required to show "that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test[.]" *Parsons*, *supra*, 754 F.3d at 688. *See also Mazza*, *supra*, 666 F.3d at 589 ("Even assuming arguendo that we were to agree with Honda's 'crucial question' contention, the individualized issues raised go to preponderance under Rule 23(b)(3), not to whether there are common issues under Rule 23(a)(2).")

Consistent with these principles, the Ninth Circuit has held that the commonality requirement is "construed permissively," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998), that "[a]ll questions of fact and law need not be common to satisfy the rule," and that the requirements for finding commonality under Rule 23(a)(2) are "minimal." *Id*. at 1019-1020. And where, as here, the proposed class seeks declaratory and injunctive relief only, not monetary relief, judicial application of the commonality standard is even more forgiving. Indeed, it has been held that class actions that seek class-wide injunctive or declaratory relief, like this case, "'by their very nature' present common questions of law and fact." *Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit Authority*, 239 F.R.D. 9, 26 (D.D.C. 2006) (quoting 7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1763 (3d ed. 2006).

> **b.   Two federal district courts have found that the practice of categorically denying claims for L-ADR raises a common question.**

This case arises from the identical claims practice at the heart of *Escalante* and *Hill*, *supra:* A health plan's use of an extra-contractual coverage guideline that erroneously designates L-ADR as "investigational" (or some variation thereof) to categorically deny coverage for L-ADR. In granting class certification, both *Escalante* and *Hill* found that this practice raises a common question.

In *Escalante v. Blue Shield of California*, *supra*, 309 F.R.D. 612, the court held that whether L-ADR was investigational within the meaning of the health plan

contract was a common question. In a passage that resonates here, the court explained that the answer to that central question:

> would result in an answer that goes to the heart of the resolution of Plaintiff's claims. Plaintiff is challenging Defendant's uniform policy of categorically denying coverage for lumbar ADR procedures. Although it may turn out that individual class members suffering from degenerative disc issues may not be covered after Defendant reviews that [sic] any particular individual's circumstances, this goes beyond the main issue of the case, which challenges Defendant's policy on its face, not Defendant's individualized coverage decisions.

*Escalante*, *supra*, 309 F.R.D. at 618.

Relying on *Escalante*, the court in *Hill* found commonality based on proof that UHIC's "standard practice is to deny lumbar ADR as unproven—meaning that it appears that when lumbar ADR is denied as unproven it is denied under standard policy." *Hill*, *supra*, 2017 WL 7038128 at *9.

*Escalant*e and *Hill* are well reasoned and are consistent with Ninth Circuit authority. *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2009) (certifying a Rule 23(b)(2) class challenging the government's "practice of prolonged detention of detainees without providing a bond hearing" and rejecting the defendant's contention that "some class members may not ultimately be entitled to a bond hearing.").

*Escalante* and *Hill* are also consistent with the commonality analysis employed, and findings made, by district courts within the Ninth Circuit in ERISA cases involving challenges to a health plan's claims handling practices. *Des Roches v. California Physicians' Service*, 320 F.R.D. 486, 497-504 (N.D. Cal. 2017) (rejecting various commonality arguments advanced by health plan because of common questions created by the health plan's development and use of claims guidelines); *Wit v. United Behavioral Health*, 317 F.R.D. 106, 127-129 (N.D. Cal. 2016) (common issue found as to whether United's behavioral health coverage determination guidelines met generally accepted standards and whether it breached its fiduciary duty simply by using the improper standards to assist in coverage determinations); *A.F. ex rel Legaard v. Providence Health Plan*, 300 F.R.D. 474, 481 (D. Or. 2013) (commonality found for Rule 23(b)(2) class because "[r]esolving the legal question

14

posed by Plaintiffs provides complete relief as to the *specific* issue raised by the 101 class, even if it does not ultimately address every class members' needs or issues."); *Z.D. ex rel. J.D. v. Group Health Cooperative*, 2012 WL 1977962 at *8 (W.D. Wash. June 1, 2012) (common issue under Rule 23(b)(1) and (b)(2) regarding legality of health plan's application of age-based limitation).

### c.   Plaintiffs' ERISA claims raise at least one common question.

As in both *Escalante* and *Hill*, the Third Amended Complaint ("TAC") contains two class claims under ERISA: (1) a claim for clarification of rights pursuant to 29 U.S.C § 1132(a)(1)(B) and (2) a claim for breach of fiduciary duty pursuant to 29 U.S.C § 1132(a)(3). (Dkt. 43.) Both claims raise at least one common issue arising out of Aetna's practice of denying all requests for L-ADR as "experimental and investigational" in all circumstances—namely, whether L-ADR is safe and effective for treating degenerative disc disease. (Depo. Ex. 7 at 75; Depo. Ex. 17 at Aetna_000014.) This issue satisfies the test for commonality because its determination "would result in an answer that goes to the heart of the resolution of Plaintiff's claims." *Escalante*, *supra*, 309 F.R.D. at 618.

Moreover, Plaintiffs' claims present a common issue because "claims arising from interpretation of a form contract appear to present the classic case for treatment as a class action." *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D. Ga. 1983); *Menagerie Productions v. Citysearch*, 2009 WL 3770668 at *4 (C.D. Cal. 2009). *See also Gooch v. Life investors Insurance Co. of America*, 672 F.3d 402, 428 (6th Cir. 2012) (finding "Rule 23(b)(2) certification appropriate" despite the fact that "not every class member will have a claim for damages" because "the declaratory judgment will apply to a uniform interpretation of a contract that governs or governed each class member"). Whether L-ADR is "experimental and investigational" within the meaning of the plan, a form contract, is a question common to all class members.[9]

---

[9] Although the presence of even a single common question is sufficient, there are other common issues raised by Plaintiffs' claims. These include "whether Defendants

There are no "individualized issues" to be concerned with because Plaintiffs have established that Aetna has a "uniform policy of categorically denying coverage for lumbar ADR procedures." *Escalante*, *supra*, 309 F.R.D. at 618. Aetna has admitted that L-ADR is "never covered" under a written policy of general application, CPB 0591. As detailed *supra* at section III.C.2., that policy applies regardless of a claimant's medical need and/or individualized suitability for the surgery.

In addition, as explained in *Des Roches*, *supra*, a denial of benefits claim under ERISA does not require a showing that the plaintiff is "entitled to the denied benefits" where, as here, the essence of the denial of benefits claim is that the plan administrator "construe[d] a plan provision erroneously" and "applied an incorrect standard to its benefits determination[.]" *Des Roches*, *supra*, 320 F.R.D. at 497-504 (N.D. Cal. 2017) (quoting *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 461 (9th Cir. 1996)). In that circumstance, the court is not required to make a highly fact-intensive inquiry of individual claims because "the Court's review under 29 U.S.C. § 1132(a)(1)(B) is limited to determining whether Defendants applied the wrong standard in reviewing class members' claims." *Des Roches*, 320 F.R.D. at 498.

Like the plaintiffs in *Saffle* and *Des Roches*, Plaintiffs fundamentally claim that Aetna applied the wrong standard to their benefit determinations. Specifically, Plaintiffs claim that Aetna applied CPB 0591, which incorrectly designates L-ADR as "experimental or investigational" despite FDA approval, substantial clinical evidence of safety and efficacy (both short and long term) and widespread acceptance by the medical community.

Finally, and in any event, Aetna has forfeited any contention that L-ADR may not be medically appropriate for a given individual (i.e., based upon his or her individual medical profile) by failing to assert that ground as a basis for denial during

---

breached their fiduciary duties under ERISA by developing and using [CPB 0591]" and "whether the class is entitled to declaratory and injunctive relief." *Des Roches*, *supra*, 320 F.R.D. at 497.

the claim process. *Harlick v. Blue Shield of California*, 686 F.3d 699, 721 (9th Cir. 2012).

### d. Aetna's anticipated commonality arguments lack merit.

It is anticipated that Aetna will argue its personnel had "discretion" to disregard CPB 0591 and grant member requests for L-ADR. There is no support in the record for any such argument. Indeed, Aetna's Rule 30(b)(6) witness on the issue of Aetna's purported "discretion" admitted that nothing in CPB 0591 confers such discretion. (Ex. 12 at 416-417. *See also* Ex. 16 at 532.) Aetna's witnesses could not identify any "special circumstances" (i.e., unique medical traits or conditions) that would ever justify departing from CPB 0591's directive of non-coverage. (Ex.13 at 448; Ex. 15 at 495-496, 504-506, 514-515.)

Moreover, in *Des Roches*, *supra*, the court rejected the same type of "discretion" argument that Aetna is expected to make here. As pointed out in *Des Roches*, even if Aetna made a handful of exceptions to its written policy of non-coverage, the class consists only of members whose claims were *denied* and thus any members whose denials were overturned are not part of the class. *Des Roches*, *supra*, 320 F.R.D. at 499.

Aetna is also expected to argue that commonality is lacking because the Court may have to apply different standards of review in deciding Plaintiffs' claims. But as pointed out in *Des Roches*, "compared with the overarching question of the propriety of [CPB 0591], the prospect that the Court may need to apply two different standards of review is of minor importance." *Id.* at 503. *See also*, *Meidl v. Aetna, Inc.*, No. 3:15–CV–01319, 2017 WL 1831916 (D. Conn. May 4, 2017) (finding, in an ERISA class action, that a named plaintiff's claims were typical despite the possibility that absent class members' claims would be subject to a less deferential standard of review).

///

///

///

### 3.   Typicality

Rule 23(a)(4) requires that the claims of the named plaintiff be typical of those of the class. As summarized in *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017):

> Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative "aligns with the interests of the class." The requirement is permissive, such that "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."

*Id.* at 1161. *See also*, *Parsons*, *supra*, 754 F.3d at 685; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

In this case, the typicality requirement is satisfied because "the injuries [of the class members] are identical." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001)*, abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-505 (2005). Like Plaintiffs Hendricks, Sagalongos and Washburn, the class members have all suffered "the same or similar injury": they have been denied L-ADR on the grounds it is "experimental" or "investigational." *Escalante*, *supra*, 309 F.R.D. at 619. This common injury springs from the same "uniform course of conduct," namely, Aetna's "medical policy of categorically excluding lumbar ADR procedures from coverage." *Id*. The typicality requirement is therefore satisfied.

Aetna is expected to argue that the claims of Plaintiffs Hendricks and Sagalongos are subject to the "unique defense" of exhaustion because they did not pursue a second-level appeal. A "unique defense" is one that is "a major focus of the litigation" such that the class representative would be unduly "preoccupied" by the unique defense. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 509 (9th Cir. 1992). Defenses that can be "resolved before trial" do not fall into that category. *Negrete v. Allianz Life Ins. Co. of North America*, 287 F.R.D. 590, 604 (C.D. Cal. 2012).

Here, Aetna's exhaustion defense is meritless. Among other things, it lacks any basis in the plan language and founders under principles of futility due to Aetna's application of a categorical rule to deny coverage. (*See* Plaintiff's Opposition to

Aetna's Motion to Dismiss, Dkt. 22, at pp. 5-11.) In any event, for the reasons expressed in *Negrete*, *supra*, exhaustion does not rise to the level of a "unique defense" because it can be resolved before trial, via a motion for summary judgment. The unique facts needed to evaluate the validity of Aetna's exhaustion defense are limited to determining whether Plaintiffs Hendricks and Sagalongos filed a second-level appeal. Little, if any, additional discovery will be required. Any "unique defense" argument by Aetna predicated on exhaustion should therefore be rejected.

### 4. Adequacy.

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. This prerequisite is primarily concerned with "the competency of class counsel and conflicts of interest." *Escalante*, *supra*, 309 F.R.D. at 619 (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n. 13 (1982). Resolution of two questions determines whether this requirement is met: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Escalante*, *supra*, 309 F.R.D. at 619. *See also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

As set forth above, Plaintiffs' interests are co-extensive and do not conflict with the proposed class members' interests, and are typical of the claims of the other class members. Plaintiffs have an interest in vigorously prosecuting this case on behalf of the proposed class because they seek to preclude Aetna from improperly applying its "experimental or investigational" exclusion to members' requests and/or claims for L-ADR. This explicitly advances the interests of the class.

No issue is presented here similar to the issue presented in *Hill*, *supra*, in which the court was "troubled that Plaintiff has the most favorable review standard—*de novo* review."[10] *Hill*, *supra*, 2017 WL 7038128 at *5. Unlike the defendant in *Hill*, Aetna

---

[10] Due to this concern, the court in *Hill* limited certification to a national class of *de novo* claimants. After locating a second class representative, the plaintiffs in *Hill* filed a renewed motion for class certification seeking to fold in the abuse of discretion claimants. That motion was pending at the time of settlement. As noted *supra* at

contends that the claims of Plaintiffs here are governed by the abuse of discretion standard.[11] Accepting that argument, Plaintiffs are necessarily incentivized to make the less stringent showing required by the more favorable *de novo* review standard. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (if *de novo* review applies, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits[.]").

Finally, class counsel will vigorously prosecute this action on behalf of the class. Class counsel has significant experience in insurance litigation and class litigation. (Davis Decl. at paras. 28-30.) Gianelli & Morris has successfully prosecuted numerous insurance class actions and, in particular, health insurance class actions alleging violations of statutory and/or contractual law. (*Id.*) Gianelli & Morris was appointed Class Counsel in *Escalante* and *Hill, supra,* and thus is well suited to representing the interests of Plaintiffs and the putative L-ADR claimants here.

**C.    Rule 23(b) requirements.**

The next determination is whether this case fits one of the three subsections of Rule 23(b). Plaintiffs seek to certify the class, which is seeking equitable relief only, under subsections (b)(1) and (b)(2).

///

---

section III.B.2.d., more recent authority rejects the proposition that the possibility a court may have to apply two standards of review poses any kind of obstacle to class certification. *Des  Roches*, *supra*, 320 F.R.D. at 503; *Meidl*, *supra*, 2017 WL 1831916.

[11] (*See* Ex. 27 at 927-928, 930-931, Responses re Request for Admissions 17 and 18.) By Aetna's reasoning, Plaintiff Washburn's claims  are also governed by the abuse of discretion standard. The  State of Washington, where Plaintiff Washburn's employer is located, bans discretionary clauses. *See* WAC 284-96-012. As Aetna notes, however, such state laws are preempted by ERISA with respect to self-funded plans. *See Williby v. Aetna Life Ins. Co.*, 867 F.3d 1129, 1135-36 (9th Cir. 2017) (California statutory ban on discretionary clauses preempted as to self- funded plans); *Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625*, 856 F.3d 686, 692-95 (9th Cir. 2017) (California statutory ban saved from ERISA preemption as to fully insured plans). Plaintiff Washburn's plan is self-funded and contains a discretionary clause. (Washburn Decl. at para. 3; Ex. 7; Master Services Agreement Between Aetna and Walla Walla University, Ex. 28, at 963.)

### 1. Rule 23(b)(1).

Rule 23(b)(1) is divided into two subsections, Rule 23(b)(1)(A) and 23(b)(1)(B). Certification is proper herein under both subsections.

First, a class action is maintainable under Rule 23(b)(1)(A) if "prosecution of separate actions … would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Fed.R.Civ.P. 23(b)(1)(A).

The phrase "incompatible standards of conduct" refers to the situation where "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001). Certification under Rule 23(b)(1)(A), however, requires more "than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts[.]" *Id*. Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for money damages. *Id*.

The prospect of inconsistent declaratory and/or injunctive relief, however, satisfies Rule 23(b)(1)(A). *Zinser, supra,* 253 F.3d at 1193 fn. 9. That is precisely the situation here. Plaintiffs and the class are seeking declaratory and injunctive relief in this matter that would require Aetna to fundamentally reform its practice of denying requests for L-ADR as "experimental or investigational." Pursuit of similar claims for systemic reform through multiple individual suits would not only be inefficient, it would create a very real risk that different courts might order divergent or even conflicting relief. To avoid such a result, the class should be certified pursuant to Rule 23(b)(1)(A). *See Abramovitz v. Ahern*, 96 F.R.D. 208, 215 (D. Conn. 1982); *Robertson v. National Basketball Ass'n*, 556 F.2d 682, 685 (2d Cir. 1977) (Rule 23(b)(1) certification proper where plaintiffs sought rule changes that would impact future members).

Certification is also proper pursuant to Rule 23(b)(1)(B), which requires a showing that "adjudications with respect to individual class members … would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B). ERISA requires that, where appropriate, plan provisions must be "applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5). If this Court were to find that the terms of United's contracts require Aetna "to act in a certain fashion, ERISA would require [United] to act in a similar fashion toward all beneficiaries—the quintessential (b)(1)(B) scenario." *Group Health Cooperative*, *supra*, 2012 WL 1977962 at *7.

## 2. Rule 23(b)(2).

A class is proper under Rule 23(b)(2) if the party opposing the class has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole …" Fed.R.Civ. P. 23(b)(2). The key to certification under Rule 23(b)(2) is establishing uniform, class-wide conduct on the part of the defendant. *Parsons*, *supra*, 754 F.3d at 688. This requirement is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class a whole." *Id*.; *See also Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). That inquiry does not require an examination of the validity or bases of the class members' claim for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Parsons*, *supra*, 754 F.3d at 688.

In this case, Plaintiffs and the class members are all seeking declaratory and injunctive relief to remedy the same conduct on the part of Aetna: Aetna's uniform practice of improperly denying all requests and/or claims for L-ADR as "experimental" or "investigational." Aetna applies this categorical bar in all

circumstances and to all class members, regardless of the member's individual medical profile. (citations to evidence.) All class members were, and will be, affected by Aetna's policy and practice in the same way: they were/will be denied coverage for L-ADR. There can be no doubt, therefore, that this action "necessarily involve[s] acts that are generally applicable to the class." *Moeller*, *supra*, 220 F.R.D. at 612. *See also Arnold v. United Theatre Circuit, Inc.*, 158 F.R.D. 439, 452 (N.D. Cal. 1994) (where class members challenged defendant's failure to change certain architectural features found at its theatres, and the challenged design features affected all class members in the same way, the court determined that such a scenario "is a paradigm of the type of action for which the (b)(2) form was created"). Class certification under Rule 23(b)(2) is therefore appropriate.

### D.   Ascertainability.

"Ascertainability" refers to identifiability, i.e., "that the members of a class are identifiable at the moment of certification." *Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015).  The requirement of ascertainability is "less pressing in an action under Rule 23(b)(1) or 23(b)(2)," such as this case. *Escalante*, *supra*, 309 F.R.D. at 621; *see also* Federal Judicial Center, *Manual for Complex Litigation, Fourth* at section 21.222 (2004). The ascertainability requirement was designed for Rule 23(b)(3) actions, which involve the distribution of money and therefore "require a class definition that will permit the identification of individual class members." Federal Judicial Center, *Manual for Complex Litigation, Fourth* at section 21.222 (2004).

Even if the ascertainability requirement applied here, Aetna admits that it can identify "members of the proposed class whose requests for lumbar artificial disc replacement surgery were denied." (Ex. 26 at Response to RFA No. 15.) Nothing further is required in the Ninth Circuit to establish ascertainability. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017).

///

///

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion to certify this case as a class action under Rule 23(b)(1)(A), Rule 23(b)(1)(B), and Rule 23(b)(2); to appoint Plaintiffs Hendricks, Sagalongos and Washburn as class representatives; and to appoint Plaintiffs' counsel as class counsel.


DATED:   March 5, 2021                    GIANELLI & MORRIS


                                          By:___/s/ Adrian J. Barrio_____
                                              ROBERT S. GIANELLI
                                              JOSHUA S. DAVIS
                                              ADRIAN J. BARRIO
                                              Attorneys for Plaintiffs,
                                              BRIAN HENDRICKS
                                              ANDREW SAGALONGOS
                                              CHAD WASHBURN