# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HENDRICKS and ANDREW SAGALONGOS, on behalf of themselves and all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No.: CV 19-06840-CJC(MRWx)<br><br>ORDER GRANTING IN SUBSTANTIAL PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [Dkt. 57] |

//
//
//
//
//

## I. INTRODUCTION

Plaintiffs Brian Hendricks and Andrew Sagalongos bring this putative class action against Defendant Aetna Life Insurance ("Aetna").[1] They allege that they were harmed as a result of Aetna's general policy of denying coverage requests for lumbar artificial disc replacement surgery because the surgery is "experimental or investigational." Now before the Court is Plaintiffs' motion for class certification. (Dkt. 57.) For the following reasons, Plaintiffs' motion is **GRANTED IN SUBSTANTIAL PART**.

## II. BACKGROUND

Plaintiffs, who are each covered by Aetna insurance plans issued through their employers, suffer from disc disease in their lumbar (lower) spine, which causes them significant pain and immobility. After medication and corrective exercises failed to mitigate their symptoms, both Plaintiffs consulted with surgeons who recommended lumbar artificial disc replacement surgery ("Lumbar ADR").

Lumbar ADR involves replacing a diseased spinal disc with an artificial one. Traditionally, surgeons had recommended spinal fusion to treat degenerative lumbar disc disease, but Lumbar ADR has the potential for improved flexibility and mobility. (Dkt. 57-7 [Plaintiffs' Appendix Volume 2, hereinafter "Pl. App. V.2."] Ex. 25 at 828–29.) The FDA has approved at least two lumbar disc replacement products. (*Id.* at 829); *see Hill v. UnitedHealthcare Ins. Co.*, 2017 WL 7038128, at *1 (C.D. Cal. Mar. 21, 2017).

//

---

[1] Plaintiffs initially included Chad Washburn as a third class representative, but they now state that they are withdrawing him as a named plaintiff. Accordingly, the Court will not consider Chad Washburn in its analysis and any reference to "Plaintiffs" does not include him.

Plaintiffs requested coverage of their respective Lumbar ADR procedures, and Aetna denied both requests on the ground that Lumbar ADR was "experimental or investigational." (Dkt. 57-6 [Plaintiffs' Appendix Volume 1, hereinafter "Pl. App. V.1."] Ex. 2 at 107, Ex. 5 at 239–40.) As Aetna insureds, both Plaintiffs received summary plan descriptions ("SPDs"), which state that Aetna generally does not cover "experimental or investigational" devices or procedures. (*Id.* Ex. 1 at 69, 71, Ex. 4 at 224.) And Aetna's Clinical Policy Bulletin 591 ("CPB 591") states that Aetna considers Lumbar ADR "experimental or investigational" because there is insufficient evidence of the effectiveness of prosthetic lumbar discs. (Pl. App. V.2. Ex. 25 at 829; *see* Pl. App. V.1. Ex. 1 at 79 [defining "experimental or investigational" devices and procedures to include those with "insufficient outcomes data available . . . to substantiate [their] safety and effectiveness"].)

After paying out-of-pocket for their Lumbar ADR procedures, Plaintiffs appealed Aetna's decision to deny them coverage. After Aetna affirmed its initial denial for each Plaintiff, they filed this lawsuit alleging claims under the Employee Retirement Income Security Act ("ERISA") for (1) denial of plan benefits and clarification of rights and (2) breach of fiduciary duty. Plaintiffs assert their claims on behalf of "[a]ll persons covered under Aetna Plans, governed by ERISA . . . whose requests for lumbar [ADR] were denied . . . on the ground that lumbar [ADR] is experimental or investigational." (Dkt. 55 [Third Amended Complaint, hereinafter "TAC"] ¶ 55.) Plaintiffs seek, among other things, an injunction requiring Aetna to retract CPB 591 because it "erroneously classifies claims for [Lumbar ADR] as experimental and investigational." (*Id.* ¶ 84.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 23, district courts have broad discretion to determine whether a class should be certified. *Armstrong v. Davis*, 275 F.3d 849, 871

n.28 (9th Cir. 2001). Rule 23 is not merely a pleading standard—a party seeking class certification must affirmatively demonstrate compliance with the Rule by proving the requirements in fact. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Under Rule 23(a), a class may be certified if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

To be certified, a class must also meet the standards of one of the subsections of Rule 23(b). In this case, Plaintiffs seek certification under Rules 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2). Rule 23(b)(1)(A) allows certification "if prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Rule 23(b)(1)(B) allows certification "if prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." And Rule 23(b)(2) allows certification "if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiff bears the burden of satisfying the requirements of Rule 23. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

//

//

## III.  DISCUSSION

Plaintiffs seek to certify a class of "[a]ll persons covered under Aetna Plans, governed by ERISA . . . whose requests for lumbar [ADR] were denied . . . on the ground that lumbar [ADR] is experimental or investigational." (TAC ¶ 55.) The Court will certify a class, but it will limit the class, based on its typicality analysis, to only those persons whose benefit denials would be subject to an abuse-of-discretion review by this Court.

### A.  Rule 23(a) Requirements

#### 1.  Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no magic number required to satisfy numerosity and courts must consider the facts of each specific case. *See In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)). In general, however, courts have found that "classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1095 (C.D. Cal. 2015); *see Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015). Here, Plaintiffs present evidence that Aetna denied coverage for Lumbar ADR on "experimental or investigational" grounds to 239 of its insureds whose denials would be subject to abuse-of-discretion review by this Court. A class of this size easily satisfies the numerosity requirement and Aetna makes no argument to the contrary.

//

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, Plaintiffs must "demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). This does not "mean merely that they have all suffered a violation of the same provision of law," but rather that the plaintiffs' claim depends on a "common contention" that is capable of class-wide resolution. *Id*. This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*; *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019) ("The commonality element may be fulfilled if the court can determine 'in one stroke' whether a single policy or practice which the proposed class members are all subject to 'expose[d] them to a substantial risk of harm.'").

Here, Plaintiffs' claims depend on a question common to their proposed class that is capable of class-wide resolution. Plaintiffs bring their claims on behalf of all Aetna insureds "whose requests for lumbar [ADR] were denied . . . on the ground that lumbar [ADR] is experimental or investigational." (TAC ¶ 55.) They assert claims for clarification of rights and breach of fiduciary duty—seeking injunctive relief requiring Aetna to retract its policy that classifies Lumbar ADR as experimental or investigational. As a result, Plaintiffs' claims raise the common question of whether Lumbar ADR has been proven safe and effective for treating degenerative disc disease. If the answer is yes, then Aetna can no longer deny requests for Lumbar ADR on the ground that it is experimental or investigational. Plaintiffs' proposed class action thus has the capacity "to generate common *answers* apt to drive the resolution of the litigation." *See Dukes*, 564 U.S. at 350; *see also Escalante v. California Physicians' Serv.*, 309 F.R.D. 612, 618 (C.D. Cal. 2015) (concluding that a common question existed as to whether "Defendant

may classify FDA-approved procedures like lumbar ADR as 'experimental' or 'investigational'"); *Hill*, 2017 WL 7038128, at *9 ("[T]he Court finds that the question of whether a blanket policy of defining lumbar ADR as unproven is proper is common to the class.").

Aetna argues that the commonality requirement is not met because Aetna does not categorically deny coverage for Lumbar ADR, and its medical directors can and do approve coverage for Lumbar ADR in their clinical judgment despite CPB 591. "However, as Plaintiffs point out . . . , the proposed class consists only of patients whose claims were *denied*." *Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486, 499 (N.D. Cal. 2017). Thus, the class does not include patients whose coverage determinations "were made because of a reviewer's discretion that departed from the standards set forth in [Aetna's CPB 591] Guideline." *Id.*; *see Escalante*, 309 F.R.D. at 618 ("Although it may turn out that individual class members suffering from degenerative disc issues may not be covered after Defendant reviews [] any particular individual's circumstances, this goes beyond the main issue of the case, which challenges Defendant's policy on its face, not Defendant's individualized coverage decisions.").

Moreover, while Aetna has approved Lumbar ADR for a small portion of patients, the evidence shows that Aetna's policy is to deny coverage for Lumbar ADR because it is "experimental or investigational." Aetna's policy descriptions state that Aetna generally does not cover "experimental or investigational" devices or procedures. (Pl. App. V.1. Ex. 1 at 69, 71, Ex. 4 at 224.) And Aetna's CPB 591 states that Aetna considers Lumbar ADR "experimental or investigational." (Pl. App. V.2. Ex. 25 at 829); *see Hill*, 2017 WL 7038128, at *9 (finding commonality based on defendant's "standard practice [] to deny lumbar ADR [coverage] as unproven" even when defendant does not always deny coverage). Indeed, Aetna denied both Plaintiffs' requests solely on the ground that Lumbar ADR was "experimental or investigational." (Pl. App. V.1. Ex. 2 at 107, Ex. 5 at

239–40 ["This coverage denial was based on the terms of the member's benefit plan document . . . . The plan does not cover experimental or investigational services except under certain conditions."].)[2]

### 3.     Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons*, 754 F.3d 685 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  The purpose of the typicality requirement is to "assure that the interest of the named representative aligns with the interests of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citing *Hanon*, 976 F.2d at 508).

Plaintiffs seek to certify a class of "[a]ll persons covered under Aetna Plans, governed by ERISA . . . whose requests for lumbar [ADR] were denied . . . on the ground

---

[2] Aetna asserts that an ERISA claimant's general obligation to exhaust his administrative remedies destroys commonality because it requires an individualized factual determination for each class member. Specifically, Aetna asserts that declining to make this factual determination for each class member would violate the Rules Enabling Act, which forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right," including Aetna's right to the exhaustion defense. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011).  But courts in this district have held that "unnamed class members in an ERISA class action need not exhaust their administrative remedies" because "the named plaintiff's claim puts the defendant on notice of the absent class members' claims and thus fulfills the function of the internal grievance procedure." *Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486, 500 (N.D. Cal. 2017) (quoting *Leon v. Standard Ins. Co.*, 2016 WL 768908, at *4 (C.D. Cal. Jan. 28, 2016); *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 494 (N.D. Cal. 2010). Aetna has not made the Court aware of any contrary authority addressing the exhaustion defense as it relates to commonality.

that lumbar [ADR] is experimental or investigational." (TAC ¶ 55.) But the Court concludes that Plaintiffs are not typical of all persons in their proposed class because their claims may be subject to a different standard of review than the one that applies to other proposed class members.

A district court reviews a denial of benefits de novo "[w]hen a plan does not confer discretion on the administrator to determine eligibility for benefits or to construe the terms of the plan." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). A district court must review for abuse of discretion, however, "if the plan *does* confer discretionary authority as a matter of contractual agreement." *Id.* When reviewing for abuse of discretion, a district court may review evidence outside the administrative record only in certain circumstances to determine the existence and effect of a potential conflict of interest. *Id.* But when a district court conducts de novo review, it may admit evidence outside of the administrative record to determine whether the insurer's denial was proper. *Id.*

Plaintiffs' claims are subject to abuse-of-discretion review. Consequently, Plaintiffs are incentivized to focus on evidence in the administrative record when proving that Lumbar ADR should not be classified as "experimental or investigational." Moreover, having to meet an exacting abuse of discretion standard may incentivize Plaintiffs to make different arguments than they would if they were subject to de novo review. Because these incentives could change the way Plaintiffs approach their case in a manner that is not in the best interest of proposed class members whose claims are subject to de novo review, the Court concludes that Plaintiffs' claims are not typical of all

proposed class members. The Court therefore limits Plaintiffs' proposed class to persons whose claims will similarly be subject to abuse-of-discretion review.[3]

With this limitation in place, Plaintiffs' claims are typical of the class they seek to represent. Plaintiffs' alleged injury is that they were wrongly denied coverage for their Lumbar ADR based on Aetna's general policy that Lumbar ADR is experimental or investigational. (TAC ¶¶ 71, 84.) And Plaintiffs seek to represent a class of persons whose requests for lumbar ADR were similarly denied "on the ground that lumbar [ADR] is experimental or investigational." (*Id.* ¶ 55.) Thus, Plaintiffs and the proposed class were all injured by the same course of conduct, and they all have an interest in resolving the central question raised in this action—whether Lumbar ADR has been proven safe and effective.

Aetna argues that Plaintiffs are not typical of the proposed class because they both failed to exhaust the second level of their insurance plans' internal review procedures. Aetna contends that class certification is thus inappropriate because Plaintiffs' claims are "subject to unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508. Plaintiffs respond that exhaustion of their second-level administrative appeal was not required under the plan documents and that any exhaustion requirement was excused by the futility exception. The Court agrees that the futility exception applies and concludes that Plaintiffs were not required to exhaust their second-level administrative appeal before filing their claim for denial of plan benefits.[4]

---

[3] In their reply, Plaintiffs state that the Court "may certify an abuse of discretion only class" if "the Court has any concern that potentially differing standards of review will render class adjudication of class members' claims impractical or undermine effective representation of the class." (Dkt. 77-1 at 25.)

[4] Plaintiffs were not required to exhaust the administrative review process for their other claim for breach of fiduciary duty because "[t]he exhaustion requirement . . . does not apply to plaintiffs' fiduciary breach claim because this claim alleges a violation of the statute, ERISA, rather than the Plan." *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 n.1 (9th Cir. 1991).

"As a general rule, an ERISA claimant must exhaust available administrative remedies before bringing a claim in federal court." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1298 (9th Cir. 2014). But a claimant need not exhaust a plan's internal review procedures when "plan documents could be fairly read as suggesting that exhaustion is not a mandatory prerequisite to bringing suit." *Id.* "Under ERISA, an employee benefit plan's internal review procedures must be included in the plan's written documents." *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 627 (9th Cir. 2008). In addition to the plan instrument itself, plan documents may include the summary plan description ("SPD") "so long as the SPD neither adds to nor contradicts the terms of existing Plan documents." *Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1210 (9th Cir. 2017); *see Prichard v. Metro. Life Ins. Co.*, 783 F.3d 1166, 1170 (9th Cir. 2015).[5]

Here, neither party contends that either Plaintiff's SPD contradicts or adds to the terms of its respective plan instrument because the plans incorporate the terms of their respective SPDs by reference. (Dkt. 71-1 Ex. Q ¶¶ 2.24, 9.1 ["Incorporated Document" includes a "summary plan description."]; see Dkt. 90 at 3; Dkt. 91 at 4; Dkt. 92 at 3–4.). The Court therefore considers the SPDs when determining whether the plan documents require exhaustion of the plans' second level of internal review.[6]

---

[5] "ERISA defines the word 'plan' as 'an employee welfare benefit plan or an employee pension benefit plan or a plan which is both,' and it requires that a 'plan' 'be established and maintained pursuant to a written instrument.'" *Prichard*, 783 F.3d at 1170 (citations omitted). "An SPD, in contrast, is a disclosure meant "to reasonably apprise [plan] participants and beneficiaries of their rights and obligations under the plan." *Id.*

[6] Neither party contends that other related documents, such as Aetna's appeal rights document, constitute plan documents in this case. (Dkt. 92 at 9 ["Plaintiffs here are *not* contending that the provisions of the Appeal Process and Member Rights document constitute plan terms."]); *see Vaught*, 546 F.3d at 627.

Neither Plaintiff's SPD can be fairly read as suggesting that exhausting the second level of internal review is not mandatory. They both state that "[g]enerally, [insureds] are required to complete all appeal processes of the Plan before being able to obtain External Review or bring an action in litigation." (Pl. App. V.1. Ex. 1 at 100; Dkt. 71-2 Ex. R at 391.) This statement is followed by one exception: an insured is considered to have "exhausted the Plan's appeal requirements" if Aetna or the Plan "does not strictly adhere to all claim determination and appeal requirements under applicable federal law." (Pl. App. V.1. Ex. 1 at 101; Dkt. 71-2 Ex. R at 391.) This exception to the general rule requiring an insured to complete all appeal processes is referred to as "Deemed Exhaustion." (Pl. App. V.1. Ex. 1 at 101; Dkt. 71-2 Ex. R at 391.) The SPDs go on to mention two levels of administrative appeals that insureds may file with Aetna. (Pl. App. V.1. Ex. 1 at 101; Dkt. 71-2 Ex. R at 391.)

The SPDs further state that an insured may bring a civil action in court if he does not agree with the "Final Internal Adverse Benefit Determination." (Pl. App. V.1. Ex. 1 at 100; Dkt. 71-2 Ex. R at 392.) A Final Internal Adverse Benefit Determination is defined as an Adverse Benefit Determination that Aetna has upheld "at the completion of the internal appeals process, or an Adverse benefit Determination for which the internal appeals process has been exhausted." (Pl. App. V.1. Ex. 1 at 100; Dkt. 71-2 Ex. R at 390). Finally, the SPDs state that an insured "must complete all of the levels of standard appeal described above before [requesting] External Review, other than in a case of Deemed Exhaustion." (Pl. App. V.1. Ex. 1 at 101; Dkt. 71-2 Ex. R at 393.)

The plain meaning of these provisions is clear. Before bringing a civil action for external review, an insured must complete "all . . . levels of standard appeal" described in the SPDs. (Pl. App. V.1. Ex. 1 at 101; Dkt. 71-2 Ex. R at 393.) The SPDs describe two levels of standard appeal. There is only one exception to this general rule—a claim will be "deemed exhausted" regardless of whether an insured has completed both levels of

appeal if Aetna or the Plan "does not strictly adhere to all claim determination and appeal requirements under applicable federal law." (Pl. App. V.1. Ex. 1 at 101; Dkt. 71-2 Ex. R at 391.) Thus, Plaintiffs were required to exhaust both levels of appeal unless their claims were "deemed exhausted." *See Raygoza v. ConAgra Foods, Inc.*, 2016 WL 4157357, at *4 (C.D. Cal. Mar. 9, 2016) (concluding exhaustion was required when the SPD "promulgate[d] a general rule followed by explicit carve-outs").[7]

Although the plan documents required Plaintiff to exhaust a second-level administrative appeal, Plaintiffs are excused from this requirement under the futility exception. The futility exception may excuse a claimant from "pursu[ing] an administrative review that is demonstrably doomed to fail." *Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1485 (9th Cir. 1995); *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 (9th Cir. 1991) ("A district court has discretion to waive the exhaustion requirement, and should do so when exhaustion would be futile." (citations omitted)). "[A] history of unsuccessful correspondence and review with the Plan can provide a sufficient showing of futility." *Foster v. Blue Shield of California*, 2009 WL 1586039, at *5 (C.D. Cal. June 3, 2009); *see Carey v. United of Omaha Life Ins. Co.*, 633 F. App'x 478, 479 (9th Cir. 2016) (finding futility when "a person in [plaintiff's] position would have thought that it would be futile to appeal again to [defendant] after it had twice denied his claim.").

Here, the history and nature of Plaintiffs' correspondences with Aetna demonstrate that any second-level administrative review would have been doomed to fail. Aetna formally denied Plaintiffs' respective requests for coverage of Lumbar ADR two times—in the initial denial of benefits determination and the subsequent denial of the first-level administrative appeal. (*See* Pl. App. V.1. Exs. 2–3, 5–6.) In both denials, Aetna stated

---

[7] The Court need not determine whether the "deemed exhausted" exception applies because it concludes that exhaustion would have been futile.

that it denied coverage for Lumbar ADR "based on [Clinical Policy Bulletin] criteria," which provide that Lumbar ADR is not covered because it is experimental and investigational. (*Id.* Ex. 2 at 107; Ex. 5 at 240; Ex. 3 at 131; Ex. 6 at 248–49; *see* Pl. App. V.2. Ex. 25 at 829.) The denials went on to state that they were based on each Plaintiff's plan documents, which expressly state that experimental or investigational procedures and devices are not covered by the plan. (Pl. App. V.1. Ex. 2 at 107; Ex. 5 at 240; Ex. 3 at 131; Ex. 6 at 248–49; see *Id.* Ex. 1 at 69, 71, Ex. 4 at 224.) Aetna also declined Plaintiffs' surgeons' requests for Aetna to reconsider the denials pursuant to a peer-to-peer review between Aetna and Plaintiffs' medical care providers. (*See* Dkts. 77-5 at 1223–29, 77-3 at 1169–78.) Aetna's multiple denials of Plaintiffs' requests for coverage were all based on Aetna's general policy that Lumbar ADR is experimental and investigational and thus not covered. Because Aetna's denials indicated that it was simply "following its current interpretation of [a] rule," Plaintiffs had no reason to believe that a determination in their favor was possible. Accordingly, the futility of a second-level appeal was sufficiently established. *Phillips v. Steel Workers W. Indep. Shops Pension Plan Joint Bd. of Trustees of Steel Workers W. Indep. Shops Pension Plan*, 2004 WL 2203558, at *2 (N.D. Cal. Sept. 29, 2004); *see Caldwell v. UnitedHealthCare Ins. Co.*, 2021 WL 275467, at *2 (N.D. Cal. Jan. 27, 2021) ("In a case like this in which [defendant] as a matter of established policy and practice treats a procedure as "unproven" across the board, one level of appeal is plenty and a second level would be burdensome and futile.").[8]

---

[8] Aetna asserts that a second-level administrative appeal would not have been futile because Plaintiffs would have received review from a spine specialist at the second level of appeal. But there is no evidence that Plaintiffs were aware of this because Aetna's denial letters and appeal rights documents did not mention it. *Carey v. United of Omaha Life Ins. Co.*, 633 F. App'x 478, 479 (9th Cir. 2016) (finding futility when relevant documents do "not suggest to the ordinary reader that the appeal would be conducted by an outside body or by a different body within [the insurer] that might, on the basis of the same evidence that [the insurer] had already twice rejected, find good cause to come to an opposite conclusion"). While Aetna submits a document explaining this procedure, the document appears to be an internal document and Aetna has not made any showing that this information was available to Plaintiffs. (Dkt. 91 at 14; Dkt. 73-3.) Moreover, Aetna has not provided any evidence demonstrating that the presence of a spine specialist would result in a positive benefits determination for Plaintiffs.

### 4. Adequacy

To satisfy the adequacy requirement, Plaintiffs must show that they and their counsel will fairly and adequately represent the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). This requirement ensures that the constitutional protections of due process and full faith and credit are afforded to absent class members. *Hansberry v. Lee*, 311 U.S. 32, 43 (1940). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

In light of the Court's modification to Plaintiffs' class, the Court has no reason to doubt that Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class, and the Court is not aware of any evidence indicating that Plaintiffs and their counsel have any conflicts of interest with other class members. Aetna contends that Plaintiffs are inadequate for the same reasons that they are not typical. Just as the Court already determined that Plaintiffs satisfy the commonality and typicality requirements, it concludes that Plaintiffs satisfy the adequacy requirement.

### B. Rule 23(b) Requirements

Plaintiffs seek certification under Rules 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2). The Court finds that Plaintiffs' class may be certified under Rule 23(b)(1)(A), so it is not necessary for the Court to consider the other provisions. Rule 23(b)(1)(A) allows certification "if prosecuting separate actions by . . . individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). "This subsection covers actions where 'the party

is obliged by law to treat the members of the class alike' or where 'the party must treat all alike as a matter of practical necessity.'" *Hill*, 2017 WL 7038128, at *11 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). "[A] Rule 23(b)(1)(A) action is not appropriate for situations where separate actions would simply raise the same questions of law; [i]nstead, the 'incompatible standards of conduct' of subdivision (b)(1)(A) must be interpreted to be incompatible standards of conduct required of the defendant in fulfilling judgments in separate actions." *Id.*

Plaintiffs are primarily seeking an injunction requiring Aetna to retract its policy that Lumbar ADR is "experimental or investigational." (TAC ¶ 84); *Escalante*, 309 F.R.D. at 618 (concluding that plaintiff "primarily" sought injunctive relief even when he wanted defendant to review all denied claims and disgorge improper profits made from denial of those claims); *Hill*, 2017 WL 7038128, at *11 (same). If granted, this relief would affect the rights of all class members because all class members had their "requests for lumbar [ADR] denied . . . on the ground that [it] is experimental or investigational." (TAC ¶ 55); *see Escalante*, 309 F.R.D. at 620; *Hill*, 2017 WL 7038128, at *11. And Aetna would no longer be able to deny Lumbar ADR on experimental and investigational grounds for any of its insureds. Accordingly, the prosecution of "separate actions by . . . individual class members would create a risk of inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for the party opposing the class." *See* Fed. R. Civ. P. 23(b)(1)(A).[9]

---

[9] The Court notes that certification would be also proper under Rule 23(b)(1)(B) and Rule 23(b)(2) for similar reasons. Rule 23(b)(1)(B) allows certification "if prosecuting separate actions by . . . individual class members would create a risk of adjudications . . . that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." *See Hill*, 2017 WL 7038128, at *11. And Rule 23(b)(2) allows certification "if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *See Escalante*, 309 F.R.D. at 620.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN SUBSTANTIAL PART** Plaintiffs' motion for class certification and hereby **CERTIFIES** the following class:

> All persons covered under Aetna Plans, governed by ERISA, self-funded or fully insured, whose requests for lumbar artificial disc replacement surgery were denied at any time within the applicable statute of limitations, or whose requests for that surgery will be denied in the future, on the ground that lumbar artificial disc replacement surgery is experimental or investigational, and whose denials will be subject to abuse of discretion review by the district court.

Plaintiffs Brian Hendricks and Andrew Sagalongos are appointed as Class Representatives and their counsel, Gianelli & Morris, are appointed as Class Counsel.[10]

DATED: June 11, 2021

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

[10] The Court also **GRANTS** the parties' applications to file under seal documents filed in connection with this motion for class certification. (Dkts. 72, 76). These documents contain personal health information as well as proprietary business information. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016).