UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BRIAN HENDRICKS and ANDREW SAGALONGOS, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> AETNA LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No.: CV 19-06840-CJC (MRWx) <br><br> ORDER DENYING DEFENDANT'S MOTION TO DECERTIFY THE CLASS [Dkt. 136] |

## I. INTRODUCTION

Plaintiffs Brian Hendricks and Andrew Sagalongos bring this class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, against Defendant Aetna Life Insurance Company. Plaintiffs allege that they were harmed as a result of Aetna's general policy of denying coverage requests for lumbar

artificial disc replacement surgery because the surgery is "experimental or investigational." The Court previously certified the following class:

> All persons covered under Aetna Plans, governed by ERISA, self-funded or fully insured, whose requests for lumbar artificial disc replacement surgery were denied at any time within the applicable statute of limitations, or whose requests for that surgery will be denied in the future, on the ground that lumbar artificial disc replacement surgery is experimental or investigational, and whose denials will be subject to abuse of discretion review by the district court.

(Dkt. 94 [Order Granting in Substantial Part Plaintiffs' Motion for Class Certification, hereinafter "Order"] at 17.)

Now before the Court is Aetna's motion to decertify the class in light of the Ninth Circuit's recent decision in *Wit v. United Behavioral Health*, 58 F.4th 1080 (9th Cir. 2023). (*See* Dkt. 136 [Defendant Aetna Life Insurance Company's Notice of Motion and Motion to Decertify the *Hendricks* Class; Memorandum of Points and Authorities, hereinafter "Mot."].) For the following reasons, the motion is **DENIED**.

## II. BACKGROUND

Plaintiffs, who are each covered by Aetna insurance plans issued through their employers, suffer from disc disease in their lumbar (lower) spine, which causes them significant pain and immobility. After medication and corrective exercises failed to mitigate their symptoms, both Plaintiffs consulted with surgeons who recommended lumbar artificial disc replacement surgery ("Lumbar ADR" or "L-ADR").

Lumbar ADR involves replacing a diseased spinal disc with an artificial one. Traditionally, surgeons had recommended spinal fusion to treat degenerative lumbar disc disease, but Lumbar ADR has the potential for improved flexibility and mobility. (*See*

Case 2:19-cv-06840-CJC-MRW   Document 147   Filed 07/25/23   Page 3 of 16   Page ID #:7442

Dkt. 57-7 [Plaintiffs' Appendix Volume 2, hereinafter "Pl. App. V.2"] Ex. 25 at 828–29.) The FDA has approved at least two lumbar disc replacement products. (*Id.* at 829); *see Hill v. UnitedHealthcare Ins. Co.*, No. SA CV 15–0526, 2017 WL 7038128, at *1 (C.D. Cal. Mar. 21, 2017).

Plaintiffs requested coverage of their respective Lumbar ADR procedures, and Aetna denied both requests on the ground that Lumbar ADR was "experimental or investigational." (Dkt. 57-6 [Plaintiffs' Appendix Volume 1, hereinafter "Pl. App. V.1"] Ex. 2 at 107, Ex. 5 at 239–40.) As Aetna insureds, both Plaintiffs received summary plan descriptions ("SPDs"), which state that Aetna generally does not cover "experimental or investigational" devices or procedures. (*Id.* Ex. 1 at 69, 71; *id.* Ex. 4 at 224.) And Aetna's Clinical Policy Bulletin 591 ("CPB 591") states that Aetna considers Lumbar ADR "experimental or investigational" because there is insufficient evidence of the effectiveness of prosthetic lumbar discs. (Pl. App. V.2 Ex. 25 at 829; *see also* Pl. App. V.1 Ex. 1 at 79 [defining "experimental or investigational" devices and procedures to include those with "insufficient outcomes data available . . . to substantiate [their] safety and effectiveness"].)

After paying out-of-pocket for their Lumbar ADR procedures, Plaintiffs appealed Aetna's decision to deny them coverage. After Aetna affirmed its initial denial for each Plaintiff, they filed this lawsuit alleging claims under ERISA for (1) denial of plan benefits and clarification of rights and (2) breach of fiduciary duty. Plaintiffs asserted their claims on behalf of "[a]ll persons covered under Aetna Plans, governed by ERISA . . . whose requests for lumbar [ADR] were denied . . . on the ground that lumbar [ADR] is experimental or investigational." (Dkt. 55 [Third Amended Complaint] ¶ 55.) Plaintiffs seek, among other things, an injunction requiring Aetna to retract CPB 591 because it "erroneously classifies claims for [Lumbar ADR] as experimental and investigational." (*Id.* ¶ 84.)

Case 2:19-cv-06840-CJC-MRW   Document 147   Filed 07/25/23   Page 4 of 16   Page ID #:7443

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 23 provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Thus, "[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). "A party seeking class certification bears the burden of demonstrating compliance with class certification requirements even on a motion to decertify a class." *Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937, 942 (C.D. Cal. 2022); *see also Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011) ("[A]s to the class-decertification issue, Marlo, as '[t]he party seeking class certification[,] bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met.'" (second and third alterations in original) (citation omitted)).

"In considering the appropriateness of [modification or] decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." *Ms. L. v. U.S. ICE*, 330 F.R.D. 284, 287 (S.D. Cal. 2019) (alteration in original) (citation omitted); *accord Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 600 (C.D. Cal. 2021). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate [the party's] compliance with the Rule" by "prov[ing]" the requirements "in fact." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis omitted).

A class may be certified if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

-4-

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

To be certified, a class must also meet the standards of one of the subsections of Rule 23(b). Rule 23(b)(1)(A) allows certification "if prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." *Id.* 23(b)(1)(A). Rule 23(b)(1)(B) allows certification "if prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." *Id.* 23(b)(1)(B). And Rule 23(b)(2) allows certification "if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* 23(b)(2).

### IV.   DISCUSSION

Aetna raises several arguments predicated on the Ninth Circuit's decision in *Wit* as to why decertification is warranted for failure to satisfy Rule 23(a) and Rule 23(b)'s requirements. First, Aetna argues that *Wit*'s holding that the futility exception does not apply to contractually mandated exhaustion of administrative appeals renders Plaintiffs, who failed to exhaust their appeals, atypical of the class and prohibits excusal of any unnamed class members' failure to exhaust. Second, Aetna argues that *Wit*'s rejection of

a "reprocessing" remedy under ERISA means that the commonality requirement is no longer satisfied. Third, Aetna argues that *Wit*'s rejection of "reprocessing" and Aetna's retraction of CPB 591 after this suit was filed mean that certification is improper under any subpart of Rule 23(b). Plaintiffs contest each of these points. They argue, among other things, that Aetna's systematic denial of coverage on the ground that Lumbar ADR was "experimental or investigational" excused satisfaction of the exhaustion condition of their respective plans and that commonality under Rule 23(a)(2), as well as the requirements under Rule 23(b)(1)(A) through (b)(2), remain satisfied notwithstanding *Wit*'s holdings on the "reprocessing" remedy and Aetna's retraction of CPB 591. For the following reasons, the Court agrees with Plaintiffs.

    A.    **Rule 23(a) Requirements**

        1.    **Typicality**

Aetna notes that the Court previously "excused [Plaintiffs] from" the exhaustion requirement "under the futility exception" to the exhaustion doctrine. (Mot. at 6.) In *Wit*, however, the Ninth Circuit held that "[w]hen an ERISA plan does not merely provide for administrative review but . . . explicitly mandates exhaustion of such procedures before bringing suit in federal court and, importantly, provides no exceptions, application of judicially created exhaustion exceptions would conflict with the written terms of the plan." 58 F.4th at 1098. "[B]ecause [Plaintiffs] failed to exhaust both levels of administrative appeals that, under the terms of their plans, *must* be exhausted before they can bring an action," Aetna argues that Plaintiffs' "individual claims are barred" and "are not typical of the class." (Mot. at 5–6.)

Aetna is incorrect that Plaintiffs' failure to exhaust undermines typicality. While prudential exhaustion and the futility exception thereto cannot, in light of *Wit*, apply to

the contractual exhaustion at issue here, a principle of contract law—anticipatory repudiation—requires the same result. That is, Aetna's denial of coverage for Lumbar ADR grounded in company policy communicated in essence that exhaustion of administrative appeals would not yield a different coverage determination, thus rendering exhaustion a vain and useless act and, accordingly, excusing satisfaction of the condition.

ERISA authorizes the courts "to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies set out in [the Act]." *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 411 (9th Cir. 1995). And "[i]t is well settled" under basic principles of contract law "that a repudiation of the contract by one party relieves the other party of the duty to perform any conditions precedent that may exist to the performance of the repudiator." Richard A. Lord, *Williston on Contracts* § 39:39 (4th ed. May 2023 Update) (collecting cases). "In other words, the performance of a condition precedent is waived when one party has unequivocally declared by word or act that performance of the condition will not secure performance of its counterpromise." *Id.*; *see also Restatement (Second) of Contracts* § 255 (Am. L. Inst. 1981) ("Where a party's repudiation contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused."); *id.* cmt. a ("No one should be required to do a useless act, and if, because of a party's repudiation, it appears that the occurrence of a condition of a duty would not be followed by performance of the duty, the non-occurrence of the condition is generally excused.").[1]

---

[1] The Supreme Court has looked to *Williston on Contracts* and the *Restatement (Second) of Contracts* in ascertaining common-law contract principles. *See, e.g., Mobil Oil & Prod. Se., Inc. v. United States*, 530 U.S. 604, 621–22 (2000). The Ninth Circuit also does the same—frequently and specifically in the context of policies subject to ERISA. *See, e.g., Mull v. Motion Picture Indus. Health Plan*, 41 F.4th 1120, 1130 (9th Cir. 2022); *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 876 (9th Cir. 2017); *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012); *Sec. Life Ins. Co. of Am. v. Meyling*, 146 F.3d 1184, 1192 (9th Cir. 1998).

Repudiation occurs when a party makes "a positive, unconditional, and unequivocal declaration of fixed purpose not to perform the contract in any event or at any time." *Minidoka Irrigation Dist. v. Dep't of the Interior*, 154 F.3d 924, 926 (9th Cir. 1988) (quoting *Dingley v. Oler*, 117 U.S. 490, 502 (1886)). "[I]t is not necessary that the party charged with a repudiation make a point blank declaration that it refuses . . . to perform," Lord, *supra*, § 39:40, for a party's language or conduct amounts to repudiation so long as it is "sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform," *Minidoka Irrigation*, 154 F.3d at 927 (quoting *Restatement (Second) of Contracts* § 250 cmt. b). Even "the existence of a good faith dispute" over the rights or duties of a contract "will not prevent a statement from serving as a repudiation; thus, a party acts at its peril if, insisting on what it mistakenly believes to be its rights, it refuses to perform a duty under the contract." Lord, *supra*, § 39:40.

Aetna's denial of coverage for Lumbar ADR fits this bill. Aetna communicated through individual denial letters and on its public website that, as a matter of company policy, the procedure was "experimental or investigational" and, therefore, not covered. (*See* Pl. App. V.1 Exs. 2–3, 5–6, 8–10; Pl. App. V.2 Exs. 18–25.) This policy was not empty words. As a matter of actual business practice, Aetna systematically denied coverage. (*See, e.g.*, Pl. App. V.1 Ex. 14 25:11–21; Dkt. 76-4 77:23–78:4; Dkt. 76-5 42:3–22.) Aetna's denials based on CPB 591 thus constitute an "unequivocal manifestation of . . unwillingness to perform" regardless of whether Plaintiffs exhausted their appeals. Lord, *supra*, § 39:40.

Invocation of this doctrine in this context—involving insurance policies—is not novel. Indeed, the doctrine is epitomized "when an insurance company indicates that it will not pay a claimed loss in any event." *Id.* "[T]he insured" can be "excused from compliance with a condition requiring proof of loss, arbitration, or other preliminary acts." *Id.* (collecting cases); *see also Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672 F.3d

171, 177 (2d Cir. 2012) (noting that, under "the doctrine of repudiation," "an insured should not be held to strict compliance with claim rules where the insurer has announced that it will not pay any claim under the policy regardless of the insured's compliance").

*Conrad Bros. v. John Deere Co.*, 640 N.W.2d 231 (Iowa 2001), is illustrative. There, the insured's mortgage holder and assignee of benefits filed a claim under the insured's casualty insurance policy for replacement costs after a loss event, but the insurer "informed [the mortgagee] it was not covered by the policy because it was not listed as a mortgage holder," so "any claim under [the] insurance policy would be denied." *Id.* at 235. The insurer later "pled the affirmative defense of lack of compliance with the condition precedent requiring actual replacement before an insured is entitled to replacement costs." *Id.* After upholding the validity of the mortgagee's insurance interest, the court held that the "performance of the condition to rebuild" was "excused." *Id.* at 241. The insurer "denied any coverage on the claim by [the mortgagee]. This denial of coverage, even though based upon a mistaken interpretation [of the policy], was a clear intent not to perform. Thus, [the insurer] repudiated the contract," and the mortgagee was "entitled to damages based on the full replacement costs." *Id.* at 242.

Aetna complains that "[r]epudiation is another example of a judge-made common law contract doctrine" inconsistent with *Wit*, and "Plaintiffs' repudiation argument is just a transparent bid to revive the futility exception conclusively rejected in *Wit*." (Dkt. 143 [Reply in Support of Motion of Defendant Aetna Life Insurance Company to Decertify the *Hendricks* Class, hereinafter "Reply"] at 14–15.) Not so. *Wit* concerned the applicability of an exception to prudential exhaustion, a common-law doctrine that "federal courts" can and "should usually" enforce "as a matter of sound policy" in ERISA actions to reduce frivolous litigation and promote consistency, nonadversariality, cost-minimization, and administrative expertise. *Diaz v. United Agric. Emp. Welfare Benefit Plan & Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995) (citation omitted). *Wit* clarified that when

exhaustion is required as a matter of contract, the rules governing prudential exhaustion have no place. Contractual exhaustion instead should be treated as just that—a matter of contract. And it would indeed be odd to conclude that a "well[-]settled" contract principle like excusal of conditions precedent upon repudiation did not apply to ERISA disputes involving parties' contractual rights and duties. Lord, *supra*, § 39:39.

Further, one of the central premises of Aetna's argument—that judge-made common law cannot apply to contractual exhaustion—defies common sense. Since "ERISA does not contain a body of contract law to govern the interpretation and enforcement of . . . benefit plans," *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997), such principles are necessarily judge-made. All these principles would fall to the wayside were a court to adopt Aetna's premise.

To be sure, a denial of coverage does not *always* excuse contractually mandated exhaustion. Appeals processes can and often do result in revised coverage decisions. When a claim is initially denied on the ground that a procedure is not medically necessary, for example, it is certainly possible that a different decision may result after "a claimant's appeal [is] heard by an impartial decisionmaker who" reviews "information from the previous denial" as well as any "new information" submitted by the insured. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 631 (9th Cir. 2008). Thus, the initial denial of coverage hardly qualifies as "a positive, unconditional, and unequivocal declaration of fixed purpose not to perform the contract in any event or at any time." *Minidoka Irrigation*, 154 F.3d at 926 (quoting *Dingley*, 117 U.S. at 502).

But it strains credulity to say that, once a person is denied coverage for a procedure on the grounds of company policy backed up by business practice, there is any realistic possibility that an appeals process would yield a different coverage determination. In that circumstance, once the plan administrator denies coverage and cites the policy as its

basis, the administrator essentially "declare[s] . . . that performance of the condition"—exhaustion of administrative appeals—"will not secure performance of its counterpromise" to pay the claim. Lord, *supra*, § 39:39. Forcing a claimant to jump through the hoops of an appeals process is tantamount to "requir[ing] a useless act." *Restatement (Second) of Contracts* § 255 cmt. a. Contract law requires no such thing.

Simply put, Plaintiffs are typical of the class notwithstanding their failure to exhaust administrative appeals. Whether Plaintiffs were obligated to exhaust their appeals or were excused from exhaustion is determined by whether Aetna breached a contractual duty in denying coverage of Lumbar ADR as "experimental or investigational." That issue overlaps with the issue at the heart of the merits dispute for Plaintiffs and the rest of the class—namely, whether Lumbar ADR is, in fact, "experimental or investigational" and, therefore, an uncovered procedure.[2]

### 2. Commonality

Aetna says that "[a]t the class certification stage, Plaintiffs explained in their reply brief they were not seeking the payment of benefits but rather reprocessing [of claims] as a final remedy standing alone." (Mot. at 14.) *Wit* subsequently clarified that "reprocessing" was not a remedy available under ERISA. *See* 58 F.4th at 1094–95. "[R]emand to the administrator for reevaluation" of a benefits determination "is a *means* to the ultimate remedy*" under section 1132(a)(1)(B), *id.* at 1094, which provides that a

---

[2] Aetna also says that the Court's prior excusal of unnamed class members' failure to exhaust their administrative appeals is no longer tenable, and the commonality requirement is now no longer satisfied, after *Wit*. (*See* Mot. at 9–10.). The Ninth Circuit held in *Wit* that "by excusing all absent class members' failure to exhaust, the district court abridged [the defendant's] affirmative defense of failure to exhaust and expanded many absent class members' right to seek judicial remedies under Rule 23(b)(3)," 58 F.4th at 1098, thus violating the Rules Enabling Act, 28 U.S.C. § 2072, *see* 58 F.4th at 1098. Aetna's argument is of no consequence. At minimum, unnamed class members would be excused from the exhaustion condition precedent for the same reasons as the named Plaintiffs.

participant or beneficiary may "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B). "Because classwide 'reprocessing' is not available," Aetna argues that "Plaintiffs could proceed on a classwide basis only by showing that each class member may be entitled to benefits under her plan 'if outstanding factual determinations were resolved in her favor.'" (Mot. at 15 [citation omitted].) "But here, just as in *Wit*, class certification is improper due to the 'numerous individualized questions involved in determining Plaintiffs' entitlement to benefits' for L-ADR." (*Id.* [citation omitted].) Since "'reprocessing' is not an available remedy," according to Aetna, the commonality requirement is no longer met. (*Id.* at 16.)

The presence of "individualized questions" is neither here nor there. "Plaintiffs need not show . . . that 'every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is "even a single common question," a would-be class can satisfy the commonality requirement of Rule 23(a)(2).'" *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (citation omitted). "Thus, '[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.'" *Id.* (alteration in original) (citation omitted). In previously finding the commonality requirement satisfied, the Court stated that "Plaintiffs' claims raise the common question of whether Lumbar ADR has been proven safe and effective for treating degenerative disc disease. If the answer is yes, then Aetna can[not] deny requests for Lumbar ADR on the ground that it is experimental or investigational." (Order at 6.) "Plaintiffs' proposed class action thus has the capacity 'to generate common *answers* apt to drive the resolution of the litigation.' (*Id.* [quoting *Dukes*, 564 U.S. at 350].) Aetna points to nothing in *Wit* that undermines this conclusion.

Aetna appears to confuse when the presence of "numerous individualized questions" matters. Its argument might make more sense if, for example, the Court had certified a class under Rule 23(b)(3), which requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). But the Court "certified under Rule 23(b)(1)(A)" and "note[d] that certification would be also proper under Rule 23(b)(1)(B) and Rule 23(b)(2)." (Order at 15, 16 n.9.) The Court made no mention of certification under Rule 23(b)(3).

Moreover, Plaintiffs and class members do not need to show that they are entitled to a "positive benefits determination" to succeed on their claim for breach of fiduciary duty. *Wit*, 58 F.4th at 1094. For a plaintiff to have a viable fiduciary duty claim, "the defendant must be an ERISA fiduciary acting in its fiduciary capacity" and must violate "ERISA-imposed fiduciary obligations." *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004) (cleaned up). A plan administrator like Aetna acts as a fiduciary when exercising discretionary responsibility. *See* 29 U.S.C. § 1002(21)(A); *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421–1422 (9th Cir. 1997). Specifically, it exercises fiduciary responsibility when creating internal guidelines to determine the scope of coverage. *See Kazda v. Aetna Life Ins. Co.*, No. 19-cv-02512, 2019 WL 6716306, at *4 (N.D. Cal. Dec. 10, 2019); *Alexander v. United Behavioral Health*, No. 14–cv–05337, 2015 WL 1843830, at *6–7 (N.D. Cal. Apr. 7, 2015). An administrator breaches its fiduciary obligations if it fails to administer the plan "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan" or fails to exercise reasonable "care, skill, prudence, and diligence under the circumstances." 29 U.S.C. § 1104(a).

In any event, Plaintiffs *can* show that they and the class members are "entitled to benefits under [their] plan[s] 'if outstanding factual determinations were resolved in

[their] favor'" through adjudication of the common issue of the propriety of CPB 591. (Mot. at 15 [citation omitted].) Aetna's basis for denying coverage of class members' claims was this policy, and the "[C]ourt must examine only the rationales the plan administrator relied on in denying benefits." *Collier v. Lincoln Life Assurance Co. of Bos.*, 53 F.4th 1180, 1182 (9th Cir. 2022). In one fell swoop, the Court can adjudicate whether Aetna abused its discretion in denying coverage.

### B.   Rule 23(b) Requirements

#### 1.   Rule 23(b)(1)(A)

The Court previously certified Plaintiffs' class under Rule 23(b)(1)(A), (*see* Order at 15), which allows certification if separate actions risk "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). The Court noted "Plaintiffs are primarily seeking an injunction requiring Aetna to retract its policy that Lumbar ADR is 'experimental or investigational,'" and "[i]f granted, this relief would affect the rights of all class members because all class members had their 'requests for lumbar [ADR] denied . . . on the ground that [it] is experimental or investigational.'" (Order at 16 [alterations in original] [citations omitted].) Aetna argues that this conclusion "can no longer stand because Aetna has now changed" its policy on Lumbar ADR "to provide coverage . . . based on accepted clinical criteria and an individualized review of each claimant's medical history," so "the alleged conduct that Plaintiffs sought to modify through injunctive relief no longer exists." (Mot at 16.) Aetna suggests elsewhere in its motion that the request for "an injunction [now] has been rendered moot by Aetna's changes to" its policy on Lumbar ADR. (*Id.* at 15.)

Aetna's revision of its policy does not moot Plaintiffs' request for an injunction. "A case becomes moot . . . when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike*, 568 U.S. 85, 91 (2013) (cleaned up). "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to [its] old ways." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (cleaned up). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190. Nothing prevents Aetna from returning to its old ways, so the injunction is still viable notwithstanding Aetna's change of heart. *See, e.g.*, *FTC v. Affordable Media*, 179 F.3d 1228, 1237–38 (9th Cir. 1999) (holding that the defendants' voluntary cessation of allegedly fraudulent sales scheme did not moot FTC's request for an injunction).[3]

### 2. Rule 23(b)(1)(B)

"The Court note[d] that certification would be also proper under Rule 23(b)(1)(B)," (Order at 16 n.9), which allows certification when separate actions risk "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests," Fed. R. Civ. P. 23(b)(1)(B). Aetna argues that "[t]he class cannot be certified

---

[3] In the section of its motion challenging whether Rule 23(b)(1)(A) is satisfied, Aetna also argues that declaratory relief is unavailable, citing as authority a post-*Wit* case, *LD v. United Behavioral Health*, No. 20-CV02254-YGR, 2023 WL 2806323 (N.D. Cal. Mar. 31, 2023). (*See* Mot. at 17–18.) Aetna cites *LD*'s discussion concerning "injunctive relief or *corresponding declaratory relief*" under Rule 23(b)(2), 2023 WL 2806323 at *3, but fails to explain how that reasoning bears on the Rule 23(b)(1)(A) analysis. *See, e.g.*, *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("Issues raised in a brief that are not supported by argument are deemed abandoned.").

under this rule either," raising the same arguments about the reprocessing remedy and injunctive and declaratory relief discussed above. (Mot. at 18.) And for the same reasons, this Aetna's challenge to certification under Rule 23(b)(1)(B) fails.

### 3. Rule 23(b)(2)

Finally, the "[t]he Court note[d] that certification would be . . . proper under . . . 23(b)(2)," (Order at 16 n.9), which allows certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2). Aetna argues that it "has already changed" its policy on Lumbar ADR "to provide coverage . . .—the very relief Plaintiffs 'primarily' sought in this litigation. Under these circumstances, there is no relief the Court could order that would 'perforce affect the entire class at once' as required for Rule 23(b)(2) certification." (Mot at 19 [citations omitted].) As noted above, however, injunctive relief concerning Lumbar ADR coverage is still available, and "corresponding declaratory relief," Fed. R. Civ. P. 23(b)(2), likewise remains available.

## V. CONCLUSION

For the foregoing reasons, Aetna's motion to decertify the class is **DENIED**.

DATED: July 25, 2023

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE